# HASTINGS *v.* HALLECK *et al.*

A STIPULATION to the effect that a statement may "be used on the motion for new trial in this cause, and also on the appeal to the Supreme Court," includes an appeal from the judgment, as well as an appeal upon the decision of the motion for new trial.

To charge an Attorney with negligence in failing to set up a defense, based upon certain facts communicated to him by his client, he must show by evidence the existence of such facts, and that they were susceptible of proof at the trial by the exercise of proper diligence on the part of his Attorney.

Where in a suit a question has been made and decided by the Supreme Court, counsel cannot be charged with negligence in acting upon that decision as the law of the case.

Where a building is in process of construction by three tenants in common, accord-ing to a plan agreed on, a power of Attorney from one to an agent, authorizing him "to represent the principal's interest in the property, to cast his vote in relation thereto in all matters relating to the administration or improvement of the property, and to do and perform every act or thing relating to and concern-ing such interest, except the sale or hypothecation thereof," authorizes the agent to consent to alterations in the plan.

APPEAL from the Twelfth District.

The Court below charged the jury, among other things, in substance, "that plaintiff had not proved any legal damages as resulting from defendant's neglect;" and also, "that the power of Attorney did confer authority upon Haven and Briceland to borrow the money to complete the work, and that they, as his agents, had authority to make the alterations made in the plans after Hastings left the State in August, 1853, and more particu-larly in connection with the circumstances as testified to under which the power was executed."

The power of Attorney is as follows :

"Know all men by these presents, that I, John Hastings, of San Francisco City and County, State of California, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, J. P. Haven and J. N. Briceland, separately and jointly, my true and lawful Attorneys for me, and in my name, place, and stead, to collect, receive, and receipt, for any sum or sums of money due, or that hereafter may become due, as my proportionate share of rents or other profits in and of a certain property contained within the parallelogram bounded by Sansome and Montgomery, Chesnut and Lombard streets, in the city of San Francisco, to represent me and my said interest therein, and to cast my vote in relation thereto in common with my own cotenants and copartners therein, in all matters relating to the administration or improvement of said property, and to do and perform any and every act or thing relating to, and concerning my interest aforesaid, excepting the sale or hypothecation thereof, as I, if personally present, might, could, or would, do in the premises, giving and granting unto my said Attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I might or could do if personally present; with full power of substitution and revocation, hereby ratifying and confirming all that my said Attorney, or my substitute, shall lawfully do or cause to be done by virtue hereof.

In witness whereof, I have hereunto set my hand and seal, the first day of August, in the year one thousand eight hundred and fifty-three.

JOHN HASTINGS,        [L. S.]

Signed, sealed, and delivered, in the presence of E. V. Joice."

*F. J. Lippitt,* for Appellant, said the power of Attorney from Hastings to Haven and Briceland did not authorize them to borrow money, or to consent to any alteration in the plan of the building. (Dunlap's Paley's Agency, 192; *Billings* v. *Morrow,* 7 Cal. 174; *Pott* v. *Bevan,* 47 E. C. L. 338; 7 Mees. & Wels. 595; 47 E. C. L. 33; 10 Wend. 680; Story on Notes, Sec. 14; 10 Met.

168; 23 Pick. 304; 8 Met. 458, 459 ; 6 Black. 370 ; 10 Met. 168; 1 Sand. 277 ; 21 E. C. L. 64.)

The case of *Adams & Co.* v. *Hastings,* was lost in the Superior Court by the defendants' neglect.

1. On the trial of the cause now before the Court, there was evidence to warrant a jury in finding that Hastings had communicated the facts of his defense and the names of the witnesses who could prove them, to the defendants as his Attorney and counsel, before the suit of Adams & Co. was tried.   A negative pregnant is an admission.  (*Baker* v. *Bailey,* 16 Barb. 56.) The defendant "never heard of certain matters before a certain time," is a negative pregnant that he did afterwards.  (*Walker* v. *Walker,* 2 Atk. 100.)   An evasion is an admission.  (*McCampbell* v. *Gill,* 4 J. J. Marsh, 90, 91; 3 Green. Ev. Sec. 276.)  2. The failure to prove the facts was owing to the defendants' neglect. The only point raised by the defendants on the trial was the sufficiency of the power of Attorney on its face to authorize the borrowing of money.   Defendants were guilty of neglect, if they knew enough to put them on inquiry.  (You. & Col. 271, 280.)

II.   By their neglect and misconduct defendants lost Hastings a new trial.   Again, the Supreme Court reversed the judgment against Hastings; but the defendants, as Hasting's Attorneys, sacrificed the new trial, to which he had become entitled, by a stipulation that the judgment should stand as affirmed.

III.   If, by defendants' neglect, a new trial was lost, they are liable in this action for all damages caused by the judgment, unless they prove affirmatively that a new trial would not have varied the result.  (*Swannell* v. *Ellis,* 8 E. C. L. 542 ; *Bourne* v. *Diggles,* 18 Id. 652 ;  *Godefroy* v. *Jay,* 20 Id. 190, 191.)

IV.   If Hastings had had a new trial, apart from his defense to the entire claim, he would have been able to reduce the interest of three per cent. per month from the date of the note to ten per cent. per annum, which would have saved him seven thousand three hundred and forty-six dollars and eighty-seven cents a year, or upwards of twenty-two thousand dollars by the time the judgment was satisfied.

*Winans,* also, for Appellant, discussed the effect of the stipula-

tion referred to in the opinion of the Court, insisting that it embraced an appeal from a judgment as well as from an order overruling a motion for new trial. (1 Taunton, 417; *Goodlittle* v. *Bailey*, Cowper, 600; *Parkhurst* v. *Smith*, Willis, 332; 2 Blac. Com. 279; 1 Scott, N. B. 309; 19 Vt. 202; 13 How. Pr. 23; 2 Zabriskie, 104.)

*Yale*, for Respondents. First, as to the motion to reject the statement. The stipulation had reference only to the appeal taken from the order denying the motion for a new trial. By the terms of the stipulation itself the statement is necessarily associated with the motion for the new trial, for which it was prepared. No stipulation relating to an appeal should be construed to refer to more than one appeal. The legal inference is, that the parties treated of the immediate matter before them, not to any number of appeals growing out of the same case. The immediate appeal referred to here, was the appeal from the motion denying the new trial. On a dismissal of that appeal the stipulation ceased to operate.

On the merits, Mr. Yale argued the following propositions:

1st. The legal obligation imposed upon the defendants, by engaging to defend the action of *Adams & Co.* v. *Hastings*, was to exercise reasonable diligence and skill in their profession as Attorneys and Counselors-at-Law in the defense of said action. (*Pennington's Ex'rs* v. *Yell*, 6 English, 227—229; *Evans* v. *Watrous*, 2 Porter, Ala. 210; *Suydam* v. *Vance*, 2 McLean, 102; *People* v. *Yaldon*, 4 Burrows, 2060; *Lamphier* v. *Phipos*, 8 Car. & Payne, 479; *Lynch* v. *Commonwealth*, 16 S. & R. 370; *Godefroy* v. *Dalton*, 6 Bing. 460; 19 C. C. L. 135.)

2d. The presumption of law is, that the defendants did exercise reasonable diligence and skill in their profession of Attorneys and Counselors-at-Law, in said case, until the contrary is established by evidence. (*Pennington's Ex'rs* v. *Yell*, 6 Eng. Ark. 228.)

3d. "If from the evidence, there was no subsisting defense to the suit of *Adams & Co.* v. *Hastings*, if no just and proper defense could have been set up in said action, then the defendants were not liable to the plaintiff in this action." *Hogg* v. *Martin's Ad'mr*, Riley, S. C. 157; *Grayson* v. *Wilkinson*, Smede & Mar. 288.)

As to the power of Attorney, it was sufficient to enable the agents to do everything except to sell or hypothecate.

4th. If from the evidence, any important matter was omitted in the defense of the action in consequence of the absence of Dr. H. which might have been made had he been present, aiding and assisting, and that absence was not brought about by the instigation of the defendants, then they were not liable in this action.

5th. It has not been shown by the evidence, that the defendants did not exercise reasonable diligence and skill in the preparation and defense of said action of *Adams & Co.* v. *Hastings*, either on the trial in the Superior Court, or in the argument of the appeal in the Supreme Court.

TERRY, C. J. delivered the opinion of the Court—FIELD, J. and BALDWIN, J. concurring.

This is an action against Attorneys, to recover damage for injuries alleged to have resulted from their negligent and unskillful management of a cause in which they were retained by plaintiff.

Judgment was rendered in the Court below for defendants, and plaintiff appealed.

The statement in the record was prepared with reference to plaintiff's motion for a new trial, and contains a stipulation to the effect that it may " be used on the motion for a new trial in this cause, and also on the appeal to the Supreme Court." The Respondent moves to reject this statement, on the ground that the stipulation had reference to a contemplated appeal from the order of the Court on the motion for a new trial; and was not intended to apply to an appeal from the judgment only, in which the propriety of the decision on the motion for new trial was not involved.

It was doubtless contemplated by the parties, at the time of making the stipulation, that an appeal would be taken from any decision which might be rendered by the Judge below upon the motion for a new trial. But it is not perceived that plaintiff is at all benefited, or defendants prejudiced, by the fact that the appeal is taken from the judgment alone; and it is not at all likely that defendants intended to hold plaintiff bound to appeal

from both the judgment and order refusing a new trial, or that they would have interposed any objection to his appealing from the judgment alone. We think the language of the stipulation is sufficiently broad to include any appeal which plaintiff should elect to prosecute in the cause, and that the objection to the statement is not well taken.

Having disposed of the preliminary objection to the statement, we will proceed to an examination of the case made by the record.

The Court below instructed the jury " that plaintiff had not proved any legal damages as resulting from defendants' neglect," and the point presented by the exception to this instruction necessarily involves an investigation of the evidence given on the trial, and the determination of questions of fact, which are almost the only questions at issue.

It appears that in 1853, plaintiff was part owner of certain lots in San Francisco, on which he, in connection with his cotenants, Adams & Co., Woods, and Flint, Peabody & Co. was constructing large and expensive improvements; that while these improvements were in progress, plaintiff departed from the State, leaving Haven and Briceland as his agents, with full power to act for him in matters pertaining to his interest in the property; that, after his departure, a change was made in the plans of the building, involving a large increase of expenditure; that, in consequence, large advances were made by the banking house of Adams & Co. to defray the expenses incurred in the erection of the buildings, for the one-fourth of which advances, the agents of the plaintiff executed a note or obligation in writing, on the part of the plaintiff, to pay the same, with interest at three per cent. per month from the dates of the various advances; that suit was instituted by Adams & Co. on this obligation, and plaintiff's interest in the property attached; that, after the institution of this suit, plaintiff returned to the State, but within a short period he, after having employed defendants to conduct his defense, again left the State clandestinely, and under an assumed name, in order to avoid service of process, and thus delay the trial of the cause; that defendants appeared in the action as the Attorneys of plaintiff; that the judgment was rendered against plaintiff for the full sum claimed; that an appeal

was taken to the Supreme Court, in which the judgment was reversed, because of the allowance of interest for the time prior to the date of the obligation sued on, after which defendants signed a stipulation, agreeing to permit the judgment to stand as affirmed upon the deduction of the amount of interest erroneously allowed in the Court below.

The plaintiff alleges that he had a good defense to the whole of the claim of Adams & Co. because of an unauthorized change in the plans of building, (which had been agreed on by all the parties interested in the property,) made by Woods and Haskell, the agent and resident partner of Adams & Co. by which alone the additional expense was incurred, and the advances made necessary; that defendants were fully informed of this defense, but failed to set it up in answer to the suit, and by stipulating for the affirmance of the judgment, after deducting interest, deprived plaintiff of the benefit of a new trial, in which such defense could have been established.

The only evidence that the defendants were apprised of the grounds of defense stated, is contained in an allegation in the complaint, (which plaintiff insists is not sufficiently controverted by the answer,) and the fact that the plaintiff was, while the suit was pending, and before his second departure from the State, in frequent consultation with defendants, and living upon terms of close intimacy with one of them. It is at all times difficult, if not impracticable, to produce evidence of the tenor of confidential communications between client and Attorney, and perhaps the evidence offered, being the only kind of which the case is susceptible, would be sufficient to warrant the jury in finding that plaintiff had put defendants in possession of all the facts which constituted his defense to the action. But in order to charge the defendants with negligence in failing to set up such defense, he must show by evidence the existence of such facts, and that they were susceptible of proof at the trial by the exercise of proper diligence on the part of his Attorneys. In this the plaintiff has wholly failed. He has, indeed, shown that a material change was made in the plan of the building by which the cost was greatly increased, but so far from showing that this change was made by Woods and Haskell alone, the fact is conclusively established by the evidence of plaintiff's agents that it was approved

by both, and actually carried out by one of them, who also acted as Superintendent of the building.

That no such defense really existed, or could have been proven on the trial of the suit of *Adams & Co.* v. *Hastings,* is further shown by the evidence of O. L. Shafter, Esq. (who argued the case both before the Superior and Supreme Courts,) who testifies to frequentinterviews and conversations with plaintiff, whilst the case was pending in the Supreme Court, in which he gave his opinion that plaintiff could derive no advantage from a new trial unless he could overcome the evidence of his agents, Haven and Briceland, as given on the trial. That plaintiff never informed him that this could be done, or mentioned the names of any witnesses by which he could establish a state of facts different from that made out by their evidence, and by the failure of the plaintiff on the trial of this cause to produce such evidence. He has shown the departure from the plans originally adopted to have been ill-advised, and to have entailed a large pecuniary loss on all the parties interested, but he has failed to show any circumstances which would have relieved him from responsibility for his proportion of this loss. The persons who were fully authorized to represent him in the premises consented to the departure, and he was bound by their acts.

It is urged by the Appellant that a great damage to plaintiff was caused by the stipulation of the defendants to permit the judgment to stand as affirmed in part after it had been reversed in the Supreme Court and the cause remanded for further proceedings, because, but for this stipulation, plaintiff would have been able, upon a new trial of the cause, to establish his defense.

And it is said that, but for this stipulation, " apart from his defense to the whole claim, he would have been able to reduce the ruinous interest of three per cent. per month from the date of the note, February 13th, 1854, to ten per cent. per annum, which would have saved him from seven thousand three hundred and forty-six dollars and eighty-seven cents a year, or upwards of twenty-two thousand dollars, by the time the judgment was satisfied in 1857. The first of these propositions is already answered ; the second is untenable. The question as to the rate of interest accruing from the date of the obligation had been directly made and decided, and counsel cannot be charged with

Hastings *v.* Halleck *et al.*

neglect for believing that the decision had become the law of the case and could not have been reviewed under the rulings of this Court, in *Clary* v. *Hoagland,* (6 Cal. 685.)

From a careful examination of all the evidence contained in the record, we are satisfied that the facts proven were sufficient to sustain a verdict for plaintiff, and that there was no error in the instruction complained of. This view renders it unnecessary to examine in detail all the points made in the elaborate and ingenious brief of counsel, the greater part of which seems to have been addressed rather to the allegations of the complaint than to the facts proven on the trial.

Judgment affirmed.

On petition for a rehearing, the following opinion was delivered by TERRY, C. J—BALDWIN, J. concurring:

Plaintiff asks for rehearing in this cause, on the ground that the Court had mistaken material facts contained in the record. Before the opinion was rendered, a very careful investigation of the whole record was had. The case was a novel one, involving the professional integrity of respectable Attorneys, and the decision depended mainly on the facts of the record. The charge of the Court below having, as counsel for Appellant contended, " entitled the Appellant to the benefit of every fact in evidence on the trial."

Upon the suggestion of the plaintiff we have again instituted an examination of the statement, and are unable to discover the mistake of fact into which it is claimed the Court became involved.

We think the conclusion stated in the former opinion that the departure from the plans originally adopted by the owners of the building were assented to by Hastings' agents, who had authority to bind him in the premises, is entirely supported by the record. The power of Attorney, authorized Haven and Briceland to represent plaintiff's interest in the property, and to cast his vote in relation thereto in all matters relating to the administration or improvement of the property, and to do and perform every act or thing relating to, and concerning such interest, except the sale or hypothecation thereof. There can be no question as to their power to consent to alterations; as to the

fact of such consent having been given, Haven says : " I remember saying to Woods when he showed me his diagrams, that I thought the alterations were wise ones. There was nothing said about the increase of cost. Briceland and myself had frequently spoken of the defects in the original plans."

Again, in answer to a question as to his testimony on the trial of a former cause, he said : "Briceland always consulted me about his vote with the other owners, and he cast the vote as we had agreed." Briceland says : " When Mr. Woods proposed to substitute bricks, I objected to it. There was no consultation on the subject. It was simply mentioned in the office. There was a strong force employed, as strong as could be, in filling in, and the winter was coming on. Masons know why it is easier to build in winter with brick than stone. I at last came to the conclusion that it would not be much more expensive, if any, to build with brick than stone. When the winter approached I thought it would be for the interest of the owners to build with brick, as the building could be sooner completed and rendered productive."

Plaintiff says : " That on the eve of Hasting's departure, the four co-owners, including Woods and Haskell, entered into a mutual agreement that the works should be completed according to the original plans, and that the warehouse and wharf being sufficient to bring in a considerable revenue, there should be thenceforth no new outlay, but the expenses of completion should be paid out of the receipts from storage and wharfage.

And further, that it was on the faith of this agreement that the power of Attorney was given to Haven and Briceland."

This is the counsel's conclusion from the testimony of Mr. Flint, who stated that " it was so understood among the owners."

It does not appear that at this time there was anything stored in the building, or that any revenue whatever was collected from the wharf, and if such an anticipation was indulged in by the parties, it must necessarily have resulted in disappointment. No revenue was being derived from the property, and we think it sufficiently appears from the evidence that in the then state of the building there was no probability of realizing any considerable sum from it. Its condition at the time is thus stated by the Superintendent :

"There was in the rear part of the building, a portion of the floor laid—about one-quarter, or thirty or forty feet—the only chance of having storage was either outside the building, or under cover of the floor, that is the floor of the second story. You could not get to the warehouse with any kind of a vehicle at that time. He further says: "I never understood that the improvements were to be completed out of the profits. If I had, I would not have drawn on Adams & Co. and would have discharged all the men."

There was certainly no reasonable ground for indulging the belief that the current revenue of the property would defray the costs of the improvements, and that plaintiff himself had doubts on the subject, is shown by his conversation with Haven, in which he expressed the belief "that moneys would be forthcoming if his own failed, that is, if his part could not be paid, it would be advanced by other partners," and the fact that he undertook to make an arrangement with Adams & Co. to advance the necessary funds, at one and a half per cent. and his giving to Haven, on the eve of his departure, a paper to this effect, which Adams & Co. refused to sign.

It is also objected that allusion is made to the fact that the plaintiff clandestinely left the State to avoid service of process, in the suit of *Adams & Co.* v. *Hastings*, which fact the counsel conceives, has no bearing upon the merits of the case, and which he insists is not true.

It was certainly not the design of any member of the Court to go out of the record, to imply a charge affecting the standing of any litigant.

The fact was thought to bear upon the merits of the case, for the reason that one of the charges in the complaint upon which damages are assigned is that defendants, instead of using proper means to procure a speedy trial of the cause, permitted it to remain pending in the Court below for about a year, the interest meantime accumulating at the rate of over seven hundred dollars per month. Defendants urged in reply to this charge that the delay was desired by the plaintiff so earnestly that he took extraordinary means to procure it. The counsel is much mistaken in supposing that evidence of this fact is confined to the

sworn answer of defendants. It appears in the testimony of two witnesses called by plaintiff, and is nowhere contradicted.

Dr. Maxwell, a witness sworn on behalf of plaintiff, testified : " When Dr. Hastings left, in 1854, I went part of the way with him to the steamer.   *   *   *   I met him somewhere on Washington Street. At his request, stopped short and did not accompany him. He requested me not to go on board, as he did not want it to be known that he was going home. He told me the day before that he was going to remain two weeks longer, and I afterwards learned that at that time he had his ticket in his pocket. He did not tell me the business on which he went home.   *   *   *   He intimated to me that it was some private matters that he wished to avoid."

B. F. Voorhies, a witness for plaintiff, "was Cashier of Nicaragua Ship Co. A few days before the sailing of the steamer a gentleman applied to take passage privately. He first applied to Mr. Ralston. I was called to be present at the meeting, and was not informed of his name till he was about leaving. I gave him the cue—a wrong name was put down on the berth-list, which is open to public inspection ; but I presume Dr. Hastings' own name was on the ticket, for the tickets were only taken up after getting to sea.   *   *   *   John Smith, or some bogus name, was put down on the berth-list. It is a common thing to do. I know that it was Dr. Hastings' from a private mark I placed under the bogus name on the berth-list, to guide me in making out the tickets."

Application denied.