[Civ. No. 17570.   Second Dist., Div. One.   Dec. 14, 1950.]

WILBUR HOWELL, Appellant, v. DUCOMMON METALS AND SUPPLY COMPANY (a Corporation) et al., Respondents.

Spray, Gould & Bowers and C. W. Bowers for Appellant.

Parker, Stanbury, Reese & McGee and John Henry Peckham for Respondents.

DORAN, J.—The present appeal is from a judgment in favor of defendant Ducommon entered by the trial court notwithstanding a verdict of $8,000 against said defendant, for personal injuries sustained by plaintiff.   Plaintiff also appeals from a judgment entered on a verdict in favor of defendant Haskins who was an overhead crane operator for Ducommon.

Plaintiff was the driver of a truck owned by the Williams Transfer Company and at the time of the accident had placed the truck in Bay 3 at the Ducommon loading dock.   Heavy

steel plates were being transferred from the Ducommon warehouse to the truck, and while so loading by means of the overhead crane operated by Haskins two pieces of steel weighing about 1,900 pounds fell upon the plaintiff.

The answer filed by the Ducommon Company and defendant Haskins denied any negligence, pleaded contributory negligence and unavoidable accident.

Respondents contend that appellant Howell although in the general employ of the Williams Transfer Company, was nevertheless in the ''special'' employ of Ducommon and in its control and direction; that therefore appellant's only remedy was under the Workmen's Compensation Act. In respect to this issue the record discloses substantial evidence to the effect that appellant was hired and paid by Williams, required to punch a time clock at the Williams plant, assigned to do trucking for the Ducommon company; that like other truck drivers, Howell was instructed ''to do whatever is requested by Ducommon for them to do.'' The truck was owned and maintained by Williams who was engaged in a general trucking business. Loading of the trucks was a matter of cooperation between employees of Ducommon and Williams' truck drivers; Ducommon's employees would direct the placing of the trucks and the loading operations. Williams maintained a dispatcher at the Ducommon plant whose duty it was to dispatch the trucks wherever Ducommon wanted materials hauled; this dispatcher had charge of all Williams drivers hauling materials out of the Ducommon plant.

Just previous to the accident Ducommon's loading foreman had directed appellant to move the Williams truck into Bay 3 underneath a particular crane, which was done. A Ducommon employee then placed two circular pieces of steel 103 inches in diameter within a so-called safety plate grip attached to the crane, which grip is said to hold the metal firmly so long as tension remains on the chain. The crane operator then moved the steel to the proper position above the truck. Howell, standing on the truck, put his hands on the steel to guide it in the customary manner. The crane operator then inquired ''if he (Howell) was ready to let it down and he nodded his head (meaning yes).'' Then, again quoting from the operator's testimony, ''things went flooey. I don't know what happened. Then is when it fell.'' According to the operator, an edge of the steel was on the truck or was ''resting on something'' when it fell on appellant; the operator did not actually see this but knew it by a ''feeling on the hoist lever.''

The grip or "grab" appeared to come loose before the steel was laid flat on the truck. The operator did not know what caused the fall and testified that nothing like this had happened before.

Appellant's testimony is fairly consistent with that of the crane operator as to what happened, and no more explanatory as to why it happened. As the material came down appellant kept "motioning" the operator back, then (appellant presumed) the steel hit the bottom of the truck and "That is when the accident happened." Howell did not anticipate there was going to be an accident and there was not sufficient opportunity to move out of the way. Appellant had nothing to do with the choice of apparatus used and did not tell Haskins how to operate the crane. Ducommon's superintendent, Chester Cooper, testified that no other accident of this kind had occurred except one which was caused by grease being on the steel, a condition not shown by any evidence in the present case.

Appellant's case was predicated on the res ipsa loquitur doctrine, it being claimed that such doctrine was applicable since (1) the accident was of a kind which does not ordinarily occur; (2) that it was caused by an instrumentality under respondents' exclusive control; and (3) it was not due to any voluntary contribution on appellant's part. The trial court instructed the jury on this issue.

It is respondents' contention that there was no evidence to support the verdict in favor of appellant; that there was no evidence of negligence on respondent's part, and that appellant was a special employee of Ducommon. It is therefore urged that the action of the trial court in overriding the verdict for appellant and granting a judgment notwithstanding the verdict, was proper.

As bearing on the contention that there was no evidence of negligence respondents call attention to the fact that this type of grip had been in use by Ducommon since 1926, that the apparatus was in nowise defective, that apparently the steel was properly gripped and the crane properly operated; that the cause of the action is unexplained, and that the res ipsa loquitur doctrine is inapplicable.

In respect to the propriety of granting a judgment *non obstante veredicto* after the jury had returned a verdict for appellant, "Respondents agree that . . . the judgment could only have been granted when, giving to plaintiff's (appellant's) evidence all the value to which it is regularly entitled

and indulging in every legitimate inference which may be drawn from the evidence, the result is that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.'' The rule is the same as that which applies to the granting of a nonsuit.

As stated in *Valentin* v. *La Societe Francaise*, 76 Cal.App. 2d 1, 4 [172 P.2d 359], ''If at the time the case was submitted to the jury there was any substantial evidence in the record to prove that defendant was negligent . . . the court erroneously granted the motion.'' And, in passing on such motions the court does not attempt to weigh the evidence but must view it in the most favorable light in support of the verdict. See *Blake* v. *Hearst Publications*, 75 Cal.App.2d 6, 8 [170 P.2d 100].

In the instant case it appears that at the close of the evidence motions for directed verdict in favor of respondents were made and denied by the trial court. Thereafter the issues were submitted to the jury under appropriate instructions and a verdict returned against the Ducommon company, but in favor of defendant Haskins, the crane operator. The trial court then granted a motion for judgment notwithstanding the verdict, and in so doing, stated: ''I can't follow the reasoning of the jury in holding Ducommon liable and the crane operator not liable.'' The trial court further took the position that ''Mr. Howell was a special employee of Ducommon, and that he is not entitled to relief as against Ducommon for that reason. . . . I am willing to stand by my decision as to Ducommon and let the District Court of Appeal worry about it.''

Under the circumstances as disclosed by the record and the well established principles governing judgments notwithstanding the verdict, the trial court's action in overturning the verdict and granting such a judgment must be deemed erroneous. By so doing the trial court in effect proceeded to weigh the evidence, determine its credibility, and substitute a decision of the court for that of the jury.

The parties to the litigation had seen fit to demand a jury trial rather than leaving the matter to the decision of a trial judge. The right to a jury trial will become meaningless if a verdict, supported by substantial evidence, is to be set aside because the judge entertains an opinion contrary to that arrived at by the jury. The function of a jury is to resolve conflicts in the evidence, determine the credibility of witnesses, and arrive at a decision which will set the matter at rest. In

the instant case it was unnecessary that the trial judge should be able to follow the reasoning of the jury so long as the verdict finds support in the evidence.

The purpose of a motion for judgment notwithstanding the verdict is not to afford a review of the jury's deliberation but to prevent a miscarriage of justice in those cases where the verdict rendered is without foundation. That the present record reveals substantial evidence and legitimate inferences from the evidence in support of the verdict, can hardly be denied. The doctrine of res ipsa loquitur, that of respondeat superior, and other applicable rules of law were before the jury, and were evidently applied to the facts with the result mentioned. The appellant is entitled to the benefit of the jury's decision.

The judgment notwithstanding the verdict as to Ducommon Metals and Supply Company is reversed with directions to enter judgment in favor of appellant on the verdict rendered. The judgment in favor of defendant Haskins is affirmed.

Drapeau, J., concurred.

WHITE, P. J.—I concur.

We are not here confronted with a situation wherein the court was ruling on a motion for a new trial. In passing upon a motion for a new trial the trial judge, as it were, becomes a thirteenth juror, and may weigh the evidence and pass upon the credibility of witnesses. But, as pointed out in the foregoing opinion, no such power is reposed in the court when passing upon a motion for judgment notwithstanding the verdict.

A petition for a rehearing was denied January 3, 1951, and respondents' petition for a hearing by the Supreme Court was denied February 8, 1951. Shenk, J., Edmonds, J., and Spence, J., voted for a hearing.