[No. G003267. Fourth Dist., Div. Three. June 30, 1988.]

VIRGINIA K. SUKOFF, Cross-complainant and Appellant, v.
E. ROBERT LEMKIN, Cross-defendant and Appellant.

**COUNSEL**

Martin C. Handweiler and Suzanne Leibowitz for Cross-complainant and Appellant.

David B. Parker, Julie Dean Larsen and Lewis, D'Amato, Brisbois & Bisgaard for Cross-defendant and Appellant.

**OPINION**

**SONENSHINE, J.**—In 1976, after 10 years of marriage, Virginia Sukoff and her husband separated. After trial, the court awarded Sukoff's husband his medical practice, pension and profit sharing plan, a San Diego condominium, a partnership interest in a professional building, and certain bank accounts. Sukoff, a psychologist, received her professional practice, bank accounts, the family residence, and a note to equalize the property division. The parties' assets totalled approximately $1 million. The judgment was appealed, but in an unpublished opinion, the Court of Appeal affirmed.

Sukoff's trial lawyer, E. Robert Lemkin, sued her for fees; she cross-complained alleging malpractice. The cases were consolidated; after three weeks of trial, the parties, waiving jury consideration of the fee issue,[1] submitted the malpractice action to the jury. The jury returned a general verdict in favor of Sukoff and awarded her $90,000 in compensatory damages for Lemkin's negligence. Sukoff also asked the trial court to allow her to include attorney fees as part of her damages and sought prejudgment interest. The trial court denied this request. Sukoff and Lemkin both appeal.

I

■ Lemkin argues the trial court erred in denying his motion for judgment notwithstanding the verdict. He maintains the evidence was insufficient, as a matter of law, to sustain the verdict.[2] We agree.

■ "The purpose of a motion for judgment notwithstanding the verdict is not to afford a review of the jury's deliberation but to prevent a miscarriage of justice in those cases where the verdict rendered is without foundation." (*Howell* v. *Ducommon Metals & Supply Co.* (1950) 101 Cal.App.2d 163, 167 [225 P.2d 293].) ■ "The scope of appellate review is to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's conclusions . . . ." (*Gordon* v. *Strawther Enterprises, Inc.* (1969) 273 Cal.App.2d 504, 511 [78 Cal.Rptr. 417, 39 A.L.R.3d 809].)

---

[1] A review of the 4-volume clerk's transcript and 1,500-page reporter's transcript reveals no order relating to Lemkin's complaint. Lemkin, in his opening brief, states the "trial court, however, . . . grant[ed] judgment for Lemkin on his complaint for fees." This was confirmed at oral argument.

[2] Because Lemkin's other arguments are apparently ones of first impression, we are tempted to address them. He claims Richard Salmon, Sukoff's only attorney expert, was incompetent to testify Lemkin's "handling of the underlying dissolution fell below the appropriate standard of care." Salmon is not a certified family law specialist, as is Lemkin. Therefore, Lemkin argues, "the law is that when a malpractice action is brought against an attorney holding himself out as a legal specialist, and the claim against him is related to his expertise as a specialist, then only an attorney knowledgeable in the specialty can adequately testify as to the applicable duty of care."

Lemkin also argues the trial court erred in denying his "pre-trial motion to bifurcate trial issues such that the jury would decide if Lemkin had committed malpractice and the court would decide if that malpractice caused any damage, i.e., to have the court try the issue of whether, but for the alleged professional negligence, the result in the underlying dissolution action would have been different."

However, because we find the evidence insufficient to sustain the verdict, we leave these issues for another day.

Likewise, we need not comment on the denial of Lemkin's motion for a new trial or the issues raised in Sukoff's cross-complaint in which she claims: (1) the trial court erred in denying her motion for leave to amend the complaint to conform to proof for prejudgment interest and (2) she should be entitled to recoup all fees paid for past services and reasonable fees and costs necessarily expended in connection with the underlying malpractice suit.

■ ■ ■ ■ We recognize the denial of "a motion for judgment notwithstanding the verdict to a large extent rests in the discretion of the trial judge. . . ." (*Id.* at p. 511.) ■ ■ ■ Nonetheless, we find the trial court erred in denying the motion.[3]

■ "In an action to recover damages caused by the attorney's malpractice, the plaintiff has the burden of proving *every essential element* of the cause of action. Thus [Sukoff needed to] establish (1) the attorney-client relationship or other basis for duty, (2) the negligent act or omission, (3) the proximate causation of [her] damages, and (4) the measure of the damages." (Mallet & Levit, Legal Malpractice (2d ed. 1981) § 657, p. 813, italics added.)

■ Clearly, Sukoff established the attorney-client relationship. But the record fails to support a finding Lemkin was negligent in his trial preparation. And the evidence is insufficient to establish either proximate cause or damages. Having failed to establish these necessary elements of her cause of action, the judgment cannot stand.

## II

Sukoff's complaint alleged negligence and prayed for resulting damages. The premise of her allegations is Lemkin failed to properly prepare her case for trial: "He conducted virtually no formal discovery, failed to obtain the husband's records and documents, and generally failed to investigate and obtain the [necessary] evidence."

But Sukoff needed to establish more than that. ■ "[A] client claiming that his [her] attorney was negligent in connection with litigation has the burden of proving that damages resulted, this burden involving, usually, the difficult task of demonstrating that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question." (Annot. (1956) 45 A.L.R. 2d 19, 21, § 5.) "Thus the issue of liability includes not only a showing the attorney was negligent but also a showing his [or her] negligence caused damage." (*Cook* v. *Superior Court* (1971) 19 Cal.App.3d 832, 834 [97 Cal.Rptr. 189].) Essentially, Sukoff had the obligation to "retry" the dissolution action during the malpractice trial.[4]

---

[3] And this is true despite the fact this is a general verdict. Sukoff suggests because it was a general verdict it is "impossible to now second guess the panel's judgment." But even a general verdict cannot stand when the evidence is insufficient.

[4] Sukoff argues "requiring a full trial of the underlying case can almost make the burden insurmountable where the primary indicia of alleged negligence is the failure to discover and

## POSTSEPARATION INCOME

The evidence introduced at the malpractice trial showed Sukoff's husband's postseparation medical practice income had substantially increased from his preseparation earnings. Expert testimony established that, for the 18 months prior to separation, her husband's average monthly draw was $6,000. In the 34 months after separation, he withdrew $378,750, or $11,140 a month. His postseparation accounts receivable increased by $57,066.

Sukoff contends Lemkin negligently conceded, at the time of the dissolution trial, all the postseparation accounts receivable and the additional postseparation compensation were her husband's separate property. She insists had Lemkin been properly prepared, she would have received an additional $50,000 to $100,000 as her share of the postseparation income and another $28,500 representing one-half of the postseparation accounts receivable.

Sukoff maintains "the issue is not so much a debate on the law than it is whether Lemkin made any effort, much less an adequate effort, to determine, prior to merely stipulating away possible community assets, whether the corporation was treated separately by [her] husband, and whether the post-separation buildups were due solely to the husband's efforts, or in fact, especially as to the additional personal compensation (double the pre-separation figure), those extra efforts were improperly aggrandized at the expense of the community."

Lemkin does not concede he negligently investigated these assets but argues Sukoff failed to introduce sufficient evidence she was damaged by his stipulation. He is correct. It was Sukoff's burden to establish that additional discovery would have resulted in a higher award to her. She needed, at the malpractice trial, to produce the evidence she claimed Lemkin negligently failed to uncover.

At the time of the dissolution trial, Civil Code section 5118 provided: "The earnings and accumulations of a spouse . . . while living separate and apart from the other spouse, are the separate property of the spouse." The reviewing court in *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432 [119 Cal.Rptr. 590] reversed a trial court which refused to consider whether

---

develop the once available but now unobtainable evidence. The burden of proof on causation of specific amounts of damages should shift to defendant."

The burden may shift when, because of the alleged negligence, the necessary evidence is unavailable. But such is not the case here. Sukoff has not alleged nor has she shown any evidence was unavailable.

the corporate entity of a community property business should be disregarded and "therefore should be treated as a sole proprietorship for determining the rights of the parties in the business, after separation." (*Id.*, at p. 437.)

The *Imperato* court, relying on Civil Code section 5118, noted, "The word 'earnings' is broader in scope than 'wages' and 'salary.' It can encompass income derived from carrying on a business as a sole proprietor where the earnings are the fruit or award for labor and services without the aid of capital." (*Id.*, at p. 437.)

In order to establish she was damaged by Lemkin's stipulation, Sukoff needed to introduce evidence at the malpractice trial that some or all of the postseparation income was community property. This she failed to do. Indeed, the only relevant evidence introduced was the following: (1) The medical corporation was a one-person service-intensive practice; (2) The postseparation accounts receivable were derived from patients and insurance companies for services rendered *after separation*; (3) All income came from her husband's personal services which were limited to fees generated by his medical practice, writing, lecturing, and acting as an expert witness and consultant; and (4) The corporation's capital assets amounted to less than $10,000.[5]

Sukoff, at the malpractice trial, neither cited any authority nor presented any evidence establishing a community interest in the postseparation income. If, as Sukoff argues, this could have been established but for Lemkin's negligence at the dissolution trial, why did she not do so at the malpractice trial? The evidence, if it existed, was just as available to her at the time of the malpractice trial as it was at the time of the dissolution.

It is not enough for Sukoff to simply allege it was possible, with the right evidence, to establish a community property interest. ■ "[T]he mere

[5] A lawyer is not expected to be clairvoyant. (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 356 [118 Cal.Rptr. 621, 530 P.2d 589]; *Davis* v. *Damrell* (1981) 119 Cal.App.3d 883, 889 [174 Cal.Rptr. 257].) Here, the result is the same, even considering case law postdating the dissolution.

In *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562 [187 Cal.Rptr. 200], husband appealed the trial court's finding the postseparation pension and profit sharing contributions were community property. In reversing, the court held "Wife's argument that the postseparation contributions were community property because they were based on *profits* to which the community, as a shareholder, had prior claim, is ingenuous if not disingenuous. *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d 446, 464-465, upon which she relies, quotes at some length from *Imperato* and tends to support our conclusion. *Aufmuth* carefully distinguishes between *corporate* earnings which (when undistributed) may tend to cause appreciation in the value of corporate shares, and the earnings of a *shareholder-employee* ' "in salary, bonuses *and other forms of benefits.*" ' (*In re Marriage of Aufmuth, supra,* at pp. 464-465, quoting from *In re Marriage of Imperato, supra,* at pp. 437-438; italics added.) Implicit in the *Aufmuth* distinction is, in context, the conclusion that the *shareholder-employee's earnings are his separate property.* " (*In re Marriage of Behrens, supra,* at p. 577, last italics added.)

probability that a certain event would have happened, upon which a claim for damages is predicated, will not support the claim or furnish the foundation of an action for such damages." (*McGregor* v. *Wright* (1931) 117 Cal.App. 186, 197 [3 P.2d 624].)[6]

And Sukoff also fails to recognize the dissolution court did consider her husband's postseparation earnings. The medical corporation *itself* possessed a value for which she was compensated. Indeed, the court found it to be worth $171,631, *including goodwill of $15,305.* ▆ ▆ ▆▆ ▆▆ ▆▆ In calculating goodwill, the court relied on *current gross receipts* which included both the accounts receivable and the income earned since separation.[7]

## PENSION AND PROFIT SHARING PLAN

Sukoff and her husband agreed the value of his pension and profit sharing plan at the date of separation was $82,650. Husband's expert testified its value at the time of the dissolution trial was $97,844. Lemkin believed the plan's actual value at that time to be less than $97,844; he concluded the plan had, after separation, invested in *losing* assets and was worth less than the original investment.[8]

---

[6] Sukoff claims she was damaged because her husband received a $7,800 credit in the underlying dissolution for "payment of community expenses from his separate funds" and this was error because the debt was actually paid from the medical practice. But as discussed, *ante,* Sukoff failed to establish a community property interest in the postseparation income. The credit was appropriate.

And her allegation concerning the Coronado condominium fails for the same reason. She has not established she had any right to those monies. The condominium was acquired during separation by the medical corporation. It was sold before the dissolution trial for a gain of $35,000 but only $14,200 was "put into the corporation." On appeal, Sukoff argues this is another example of Lemkin's failure to properly investigate and/or trace assets. However, if the purchase monies were her husband's separate property, so were the gains.

[7] Sukoff notes her husband's motion to value the practice at the time of separation (Civ. Code, § 4800, subd. (a)) was denied. But the time of valuation should be as close to time of trial as reasonably practicable " 'with the reservation, however, that since the enactment of Civil Code section 5118 . . . any portion of the . . . practice . . . including goodwill which [is] attributable to the earnings and accumulations of a spouse living separate and apart [is] the separate property of the spouse earning or accumulating the same. . . .' " (*In re Marriage of Imperato, supra,* 45 Cal.App.3d 432, 436, quoting from *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 110 [113 Cal.Rptr. 58].)

"If the earnings of a spouse [after separation] in some manner increase the value of a community asset, the court must then determine what portion of the asset is community property and what portion is separate property." (*In re Marriage of Imperato, supra,* 45 Cal.App.3d 432, 436.)

[8] The largest single asset owned by the pension and profit sharing plan at the time of the dissolution trial was a limited partnership interest. The partnership's sole asset was a promissory note for approximately $500,000 owed by another limited partnership and secured by 27 second and third trust deeds and subject to subordination of a $3 million construction loan.

Lemkin chose not to present any evidence of the plan's value at time of the dissolution trial but instead argued the plan should be valued at the date of separation. Sukoff's expert testified the plan should be valued at the time of separation, then appending a fixed rate of return. The resultant figure was greater than the $97,844 suggested by the husband's expert. This was good strategy but it did not work. The trial court accepted Lemkin's argument and valued the plan at the date of separation but declined to award interest.[9]

Sukoff argues Lemkin failed to subpoena records requested by her accountant. She maintains that without those records Lemkin could not have known the plan's actual value. And this error was compounded because depositions of her husband's accountants were never taken. Moreover, Lemkin relied on the plan administrator's "word" and documentation about the plan's investments. Sukoff alleges this was malpractice because Lemkin should have "request[ed] the administrator to testify" and should have had his "letter . . . verified."[10] As a result of this negligence, Sukoff claims she suffered a loss of $14,881 (one-half of the difference between $97,844 and $82,650 plus 12 percent interest).

Exactly what is Sukoff's complaint?[11] She argues had Lemkin's discovery been adequate he would have been able to establish the plan's actual value

---

[9] As noted earlier, Sukoff unsuccessfully appealed the judgment.

The reviewing court stated: "Initially, *wife* contends that the trial court *erred* in valuing husband's pension and profit sharing plans as of the date of separation rather than the date of trial. [¶] Wife's expert testified at trial that the pension and profit sharing plans had an aggregate value of $82,650. Husband's expert testified that the plans were worth $97,844. *The trial court adopted the $82,650 figure proffered by wife's expert as the value of the plans.* [¶] Wife is not an aggrieved party as to this issue. She failed to request judgment for a different valuation or to introduce evidence of a different valuation *during* the trial. [¶] Only an aggrieved party can appeal. (Code Civ. Proc., § 902.) Wife is precluded from arguing that the court erred in placing this value on husband's pension and profit sharing plans." (*Sukoff* v. *Sukoff* (Apr. 14, 1984) 4 Civ. 23346.)

[10] Sukoff also points to Lemkin's failure to promptly obtain a restraining order and his negligence in requesting the order be applicable only to her husband as an individual and not also as the manager of the pension and profit sharing plan. But this argument fails. As discussed *ante* and *post,* Sukoff has failed to show any resulting damage. Standard restraining orders allow investments to be made in the "normal course of business." The allegation here is the husband made bad investments, not illegal ones. An earlier restraining order, and even one applicable to the profit sharing plan, would not necessarily have precluded these investments.

[11] She does not complain Lemkin's stipulation to value the plan at the date of separation plus interest was per se negligent. Indeed, this approach was recognized in *In re Marriage of Behrens, supra,* 137 Cal.App.3d 562, 577.

The Court of Appeal, in its unpublished opinion (see *ante,* fn. 9), clearly misunderstood Lemkin's stipulation. But Sukoff does not complain Lemkin failed to present adequate evidence of the postseparation rate of return.

And the fact both the trial court and the Court of Appeal were wrong is of no moment *unless* Lemkin's negligence induced the error.

at the time of trial. But she, at the malpractice trial, presented *no evidence* of this value.[12]

In *Campbell* v. *Magana* (1960) 184 Cal.App.2d 751 [8 Cal.Rptr. 32], the plaintiff sued her attorneys for the negligent handling of her personal injury action. After a defense verdict, she appealed, arguing the trial judge erred in finding she had suffered no damages. The Court of Appeal affirmed, commenting: "[O]ne who establishes malpractice on the part of his [or her] attorney in prosecuting or defending a lawsuit must also prove that careful management of it would have resulted in recovery of a favorable judgment . . . [and] there is no damage in the absence of [this element], and the burden of proof rests upon the plaintiff to prove recoverability . . . . [¶] Such has been the rule of this state since the decision in *Hastings* v. *Halleck* (1859) 13 Cal. 203, 209-210." (*Id.,* at p. 754.) A lawyer's "liability, as in other negligence cases, is for all damages directly and proximately caused by his [or her] negligence. [Citation.]" (*Pete* v. *Henderson* (1954) 124 Cal.App.2d 487, 489 [269 P.2d 78, 45 A.L.R.2d 58].)

### 801 BUILDING

Sukoff and her husband owned a partnership interest in the medical building in which his office was located. During predissolution trial settlement negotiations, the husband's accountant prepared a community property schedule valuing this interest at $15,000. At the time of trial, Lemkin stipulated its value was $9,000.[13] Sukoff argued this constituted malpractice and she was entitled to $3,000 in damages. She maintains Lemkin's appraisal was inadequate. It consisted only of an "eyeball" evaluation and not a true appraisal, and it was malpractice to stipulate to a value less than to which the other side would have agreed.[14]

Again, Sukoff misses the point. She proffered no evidence at the time of the malpractice trial the asset was worth more than $9,000 at the time of the dissolution trial or that her husband *at that time* would have agreed to a higher value. And the fact the husband, at some time before the dissolution

---

[12] One of Sukoff's experts attempted to give his opinion of the value of the promissory note at the time of the dissolution trial. But the trial judge rejected this testimony, finding the witness was not qualified as an expert in this matter. The only other evidence offered by Sukoff was the appropriate fixed rate of return on the plan's assets from the date of separation to the time of trial. This is the same evidence Lemkin offered at the dissolution trial.

[13] Sukoff disputes Lemkin's claim she joined in the stipulation. And in any event, she argues, even if she had it would be of no moment because he misled her as to the asset's true value.

[14] The appraisal was prepared by a certified appraiser who relied on three different valuation approaches. And it was updated before trial. We question whether, using either appraisal, the asset's value supported expending additional monies on its revaluation.

trial, might have agreed to a higher value is irrelevant. What matters is how much the asset was really worth at the time of the dissolution or whether he would have *at that time* agreed to a higher figure.

The testimony at the malpractice trial established only two things: $9,000 was a reasonable value for the asset at the time of the dissolution, and Sukoff's husband would not have agreed to a higher value.[15]

## EXPERT FEES

Lemkin filed an order to show cause before the dissolution trial, requesting fees and costs. Sukoff's husband was ordered to pay $3,500 in costs, but Lemkin, rather than placing that amount in his trust account and paying costs, deposited it along with monies ordered for attorney fees, into his general account. It was subsequently applied to fees and costs. After one of Sukoff's experts did not receive his fees, he sued her, placing a $1,500 lien on the family residence in which she was residing. Ultimately, Sukoff paid the $1,500. Sukoff asked the jury to include this in their calculation of her damages.

Lemkin may have breached his fiduciary duty in depositing the costs into his general account rather than into his trust account. However, Sukoff was not damaged by the breach. Her fees and costs were far greater than those ordered paid by the husband and ultimately found by the court to be owing by her to Lemkin. In other words, Sukoff was not harmed.

## TAX DELINQUENCY

Sukoff testified she told Lemkin prior to the dissolution trial "there was a tax delinquency" in the amount of $5,100 on the family residence. She complains "he said that the bank was wrong and there were no taxes owed," yet she ultimately had to pay the delinquent taxes. She alleges this is another example of Lemkin's failure "to investigate, trace, etc."

Once again, Sukoff has left us in midthought. Is she alleging that but for Lemkin's negligence the residence value would have been $5,100 less and thus a net savings to her of $2,550? Or is she, once again, maintaining Lemkin was negligent without any showing of her resulting damages? It may well be the $5,100 was a community obligation for which her husband indeed owed half. But it might also be true previous court orders or agreements between the parties left Sukoff solely responsible for the residential

---

[15] The husband's dissolution attorney testified his client would not have agreed to a higher value. Indeed, he stated $9,000 was at the "high end."

property taxes. The evidence is simply inadequate to support any finding of damages.

The judgment is reversed. The order of the court denying the motion for judgment notwithstanding the verdict is reversed. The court is instructed to grant the motion and enter judgment accordingly. Lemkin to receive costs on appeal.

Scoville, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied July 26, 1988, and the petition of cross-complainant and appellant for review by the Supreme Court was denied September 15, 1988.