[No. B087488. Second Dist., Div. Three. Feb. 7, 1997.]

MATTCO FORGE, INC., Plaintiff and Respondent;
MATEO MINGUEZ, Plaintiff and Appellant, v.
ARTHUR YOUNG & COMPANY et al., Defendants and Appellants.

822

**COUNSEL**

Greines, Martin, Stein & Richland, Kent L. Richland, Robin Meadow, Randel L. Ledesma, O'Neill, Lysaght & Sun, J. Joseph Connolly and John M. Moscarino for Plaintiff and Appellant and for Plaintiff and Respondent.

Kathryn A. Oberly, Daniel M. Gray, Stephen N. Young, Bruce M. Cormier, Eugene R. Erbstoesser, Heller, Ehrman, White & McAuliffe, M. Laurence Popofsky, Miles N. Ruthberg and Peter W. Devereaux for Defendants and Appellants.

## OPINION

KLEIN, P. J.—Appellants and cross-respondents Arthur Young & Company, Richard E. Lamping, Thomas W. Blumer and Ernst & Young (collectively Arthur Young) appeal the judgment following jury verdicts in favor of respondent Mattco Forge, Inc. (Mattco).[1]

Because of prejudicial instructional error, the judgment is reversed, except for the award for out-of-pocket expenses and the interest thereon.

Cross-appellant Mateo Minguez (Minguez), owner of Mattco, appeals the judgment upon the granting of a directed verdict in favor of Arthur Young, which judgment is affirmed.

### BACKGROUND INFORMATION

This fact situation has spawned 11 years of convoluted and costly litigation, beginning in September 1985 in the federal court in Cincinnati, Ohio. Mattco, a parts manufacturer, filed a federal civil rights action against General Electric (GE), claiming GE's elimination of Mattco as an approved subcontractor was racially motivated. The case eventually was transferred to the United States District Court for the Central District of California, where it was bitterly contested for three and one-half years.

In August of 1987, GE filed a counterclaim against Mattco alleging Mattco had engaged in bid-rigging fraud while doing business with GE. GE also filed a summary judgment motion going to the merits of the alleged discrimination action, which was denied.

The federal suit bogged down in extremely lengthy, extraordinarily expensive, highly contested discovery disputes, involving at least six motions to dismiss and for other sanctions. Among other allegations in the motions, GE argued Mattco had fabricated documents, with the assistance of its forensic accountant Arthur Young. The federal litigation finally culminated before trial with mutual dismissals, and the case was dismissed with prejudice in March 1989.

Within about six months, in July 1989, Mattco sued Arthur Young in the Los Angeles Superior Court and ultimately went to trial on its second amended complaint alleging eight causes of action including, inter alia,

---

[1] In a judgment upon special verdicts, Mattco was awarded $995,717.38 out-of-pocket expenses and interest, $13.2 million compensatory damages and $27,680,000 in punitive damages.

accounting malpractice. Subsequently, only three causes of action were tried: professional negligence, fraudulent misrepresentation and fraudulent concealment.

Before trial, Arthur Young moved for summary judgment, contending Mattco's unclean hands during the course of the federal lawsuit and the litigation privilege barred Mattco's complaint as a matter of law. The motion was granted and Mattco appealed.

On appeal, in *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1992) 5 Cal.App.4th 392 [6 Cal.Rptr.2d 781], this court reversed. We held ". . . the federal district court decided that [Mattco and Minguez] had attempted to 'fraudulently increase the damages they seek to claim in this action, altered and fabricated estimate sheets used to help calculate those damages.' The [federal] court further found that [Mattco and Minguez] 'knowingly produced those false estimate sheets to [GE], and thereby perpetrated a fraud upon [GE], this Court, and the judicial process.'

". . . But the federal district court did not adjudicate a dispute between Mattco and Arthur Young. İt made no findings on the allegations relating to the causes of action in the case at bench. Thus, the federal district court findings satisfy neither the first, second, nor the third prong required to apply the collateral estoppel doctrine [on the issue of unclean hands.]" (5 Cal.App.4th at p. 407.)

After the case was remanded, Arthur Young refiled a cross-complaint against Mattco's former attorneys, Helmer and Neff, alleging, inter alia, fraud and complete and partial indemnity. In September 1993, Helmer and Neff entered into a purported good faith settlement with Mattco so as to bar Arthur Young's cross-complaint against them, although Helmer and Neff had not been sued by Mattco. The trial court herein found the settlement agreement to be in good faith.

On appeal, this court again reversed in *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1995) 38 Cal.App.4th 1337 [45 Cal.Rptr.2d 581]. We found the trial court abused its discretion in ruling the settlement agreement was in good faith because there was no substantial evidence the settlement was proportionate to Helmer and Neff's liability.[2]

The current appeal is from jury verdicts in favor of Mattco for a total award of $42 million, including punitive damages. The trial against Arthur

[2]After we reversed (*Mattco Forge, Inc.* v. *Arthur Young & Co.*, *supra*, 38 Cal.App.4th 1337), a remittitur was issued and the cross-complaint was returned to the trial court. To date, the parties have not pursued this aspect of the litigation.

Young lasted more than 4 months and involved approximately 40 witnesses, 880 marked exhibits and 10,000 combined pages of clerk's and reporter's transcripts. Briefs on appeal span more than 190 pages.

The main issue on appeal is whether the trial court erred in ruling that Mattco was not required to establish that absent Arthur Young's negligence, Mattco would have prevailed in the underlying case.

Since we conclude the trial court's fundamental instructional ruling was erroneous and prejudicial, regretfully, once more we must reverse and remand, thus prolonging the seemingly endless litigation.

### FACTS AND PROCEDURE

1. *Trial evidence in the superior court.*

Mattco is a manufacturing company located in Paramount, California, which supplies forged metal parts to various businesses, including GE, for which Mattco did 60 jobs over a 4-year period. The company is wholly owned by Minguez, a native of Argentina and naturalized United States citizen.

In the preparation of its federal racial discrimination lawsuit against GE, Mattco hired the accounting firm of Arthur Young as damage consultant and expert witness to assist in Mattco's calculation of lost profits when GE delisted Mattco as a supplier.

Richard Lamping, managing partner at Arthur Young, met with Minguez and gave him a "glossy promotional brochure" which represented that the firm's litigation support professionals were specially trained in legal procedures. However, the person who was assigned to the job, Tom Blumer, had no training or experience in litigation support.[3]

Blumer reviewed Mattco's business documents, including the 60 job folders on the GE jobs. He found 26 estimate sheets were missing. The estimate sheets were work sheets used by Mattco to approximate its costs in formulating bids to prospective customers.

For the 26 missing estimate sheets, Blumer asked Minguez to create workups that would reflect how he would have estimated costs on those jobs, and to prepare 26 new estimate documents. Minguez did so, and they were

---

[3]These false representations formed the basis for the fraudulent misrepresentation cause of action.

put into the respective 26 job folders without identification showing they were not original business records.

Blumer assembled packets of information on each of the 60 jobs and intermingled the original and the new business records. GE made a demand for production of documents, including a request for all documents Arthur Young had relied on in calculating damages. In response, the packets Blumer had assembled on the 60 jobs were given to Mattco's attorneys, Helmer and Neff, and subsequently to GE, without advisement of the recreated 26 estimate sheets.

After examining the above records and other evidence obtained through discovery, GE brought a counterclaim against Mattco for procurement fraud or bid rigging. Lamping's deposition was taken. He testified he had not relied upon the newly created estimate sheets in calculating damages.[4]

Unrelated to Arthur Young's involvement in the case, GE discovered information during discovery which it believed proved Mattco had destroyed other documents, hidden witnesses, and that Mattco's vice-president, Marilyn Nickles, had committed perjury. Based on this evidence, GE filed motions to dismiss, charging Mattco with this misconduct.

At one point in the federal proceedings, federal Judge Richard Gadbois suggested nothing more should be done pending resolution of sanction motions because, "there's not going to be a whole lot left of this case to do anything about when I get through with it."

In Judge Gadbois's subsequent sanction order, he repeated statements that "Ms. Nickles 'has been shown beyond anything resembling a serious doubt to be a multiple perjurer' and . . . that 'in view of her position at Mattco, there is no way [Mattco and Minguez] can avoid the extremely serious consequences of that finding.'"

Judge Gadbois's sanction order then found that "in an attempt to fraudulently increase the damages they seek, [Mattco and Minguez] altered and fabricated estimate sheets used to help calculate damages. The Court further [finds] that [Mattco & Minguez] knowingly produced those false estimate sheets to [GE], and thereby perpetrated a fraud upon defendants, this Court,

---

[4]It was Blumer's alleged negligence in asking Minguez to recreate the estimate data and in failing to make sure Mattco's attorneys understood Arthur Young's documents contained this recreated data that grounded the professional negligence malpractice cause of action. Further, it was Lamping's failure to reveal he had relied on the recreated estimate sheets in computing damages that supported Matttco's fraudulent concealment cause of action against Arthur Young.

and the judicial process. [¶] . . . [¶] It is also undisputed that [Mattco and Minguez and Lamping] relied on the fabricated estimate sheets in calculating their damages . . . . [¶] The Court finds the foregoing actions of [Mattco and Minguez] have irreparably tainted all of the evidence produced up to this point by [Mattco and Minguez and] the Court feels dismissal of the [Mattco and Minguez's] case would be appropriate. [Mattco and Minguez's] conduct was willful and in bad faith. Damages are central to the matters in controversy between the parties and fraudulent evidence of damages would directly interfere with the rightful decision of the case. . . . [¶] . . . Due to the overwhelming taint [Mattco and Minguez] have placed upon their evidence concerning damages, no such evidence of damages previously produced or prepared for this action shall be admitted in this action. [¶] . . . Due to the intimate involvement of the accounting firm of Arthur Young in the production of [Mattco and Minguez's] evidence concerning damages, Arthur Young is prohibited from involvement in any future production of evidence concerning [Mattco and Minguez's] damages in this action, and no work papers, files, or any other materials produced by Arthur Young in the past to calculate [Mattco and Minguez's] damages shall be used in any future production of evidence on that subject. [¶] . . . For the purpose of compensating [GE] for the litigation costs they have borne due to [Mattco and Minguez's] misconduct, [GE] will submit to the Court an accounting of its attorneys' fees, costs and expenses relating to the production of evidence concerning [Mattco and Minguez's] damages in this action."

After GE submitted its evidence in accordance with this order, Judge Gadbois granted $1.4 million in sanctions. The order stated the action would be dismissed if the monetary sanction of $1.4 million were not paid within 45 days and further stated, "[t]his Court's . . . Order for Sanctions only partially resolves [GE's] pending motions to dismiss. . . . After payment of the sanction for the fabrication of evidence, the Court will consider further briefing by the parties as to the appropriate penalty for [Mattco and Minguez]'s destruction of evidence."

Sanctions were not paid; the parties settled and mutually dismissed their respective lawsuits.

All of the above evidence relating to the federal lawsuit, and in particular, Arthur Young's participation in recreating the 26 estimate sheets was introduced, and expanded upon in massive detail, and sharply controverted throughout the trial.

2. *Trial court's rulings on evidentiary burdens.*

Throughout the proceedings, Arthur Young urged to the trial court that Mattco had to meet the burden of a trial-within-a-trial, i.e., that Mattco had

to prove it would have reached trial in the federal lawsuit, prevailed and obtained a judgment against GE. The trial court was adamant in rejecting this approach.

The trial court ruled, "[o]nly *in lawyer* negligence do you have the standard that you have got to show that you would have gotten the collectable judgment; in other words, the kind of 'but for' rule, which may still exist insofar as lawyer malpractice is concerned . . . ." (Italics added.) The trial court added, "If I am wrong, the Court of [Appeal] will have to tell me. [¶] . . . [¶] . . . Lawyers bear a different standard. They bear a different responsibility toward their clients than anybody else involved in litigation. . . . [¶] It is a different relationship, and I think it gives rise to a different set of responsibilities like any other professional."

Pursuant to its ruling, the trial court rejected Arthur Young's numerous offers of proof and instructions, sharply limiting Arthur Young's introduction of evidence.

As a result of the trial court's rulings, Mattco's only evidentiary burden in the liability phase of the trial was to show Arthur Young had caused Mattco to suffer "harm."[5] Its burden in the second phase on damages merely was to prove Mattco's case against GE had "value."

3. *Trial court's rulings on basic instructions.*

In the liability phase, the trial court instructed the jury it was ". . . only to determine if the actions of [Arthur Young] caused [Mattco] to suffer harm . . . ." and if the jury so determined, "you will be asked in the next phase to determine the extent of the harm . . . and the amount of damages to be awarded . . . ."[6]

At the close of phase 2, the valuation phase, the trial court instructed the jury:

"Having found that plaintiff Mattco is entitled to a verdict against defendants, you must award plaintiff damages in an amount which will reasonably

---

[5] In accordance with *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1052 [1 Cal.Rptr.2d 913, 819 P.2d 872], the trial court properly instructed the jury with BAJI No. 3.76: "The law defines cause in its own particular way. A cause of injury, damage, loss or harm is something that is a *substantial factor* in bringing about an injury, damage, loss or harm." (Italics added.)

[6] The complete instruction read: "By Order of the Court, this case has been divided into two phases: the liability phase and the damages phase. In this phase, you are only to determine if the actions of the defendants caused the plaintiffs to suffer harm. If you determine that the actions of the defendants caused the plaintiffs to suffer harm, you will be asked in the next phase to determine the extent of the harm suffered by plaintiffs and the amount of damages to be awarded to plaintiffs."

compensate for each of the following elements of claimed loss, provided that you find that such loss was suffered by plaintiff and caused by the act or omission upon which you base your findings of liability. The amount of such award may include: [¶] (1) *value* of Mattco's case against G.E.; [¶] (2) Out-of-pocket expenses; and in your discretion, [¶] (3) Interest on out-of-pocket expenses." (Italics added.) As to any definition of value, the jury was told "[i]n making an award for the value of the case, you shall exercise reasonable judgment and the damages you fix shall be just and reasonable in light of the evidence."

In the third phase of the trial relating to punitive damages, the trial court used BAJI No. 2.62, and instructed the jury it was required to find "by clear and convincing evidence that [Arthur Young] was guilty of fraud in the conduct on which you base your finding of liability."

DISCUSSION

1. *Standard of review.*

The parties agree the fundamental questions presented on appeal raise issues of law which are subject to de novo review. (*California Air Resources Bd.* v. *Hart* (1993) 21 Cal.App.4th 289, 294 [26 Cal.Rptr.2d 153].) The questions relate to the validity and impact of the instructions given to the jury. The crucial instructions pertain to an essential element of Mattco's case, namely causation.

2. *Trial-within-a-trial standard for attorney malpractice alive and well in California and elsewhere.*

Arthur Young contends on appeal, as it did consistently during trial, that the trial-within-a-trial method was required in order fairly to ascertain the impact of the negligence of accountant/litigation support persons on Mattco. Arthur Young argued to the trial court that the nature of the alleged injury—the loss of a legal claim involving accountant malpractice—called for the adoption of the trial-within-a-trial approach. In presenting its legal theory, Arthur Young's arguments focused heavily on Mattco's having to show it would have *prevailed in Judge Gadbois's court* in the underlying federal case against GE.

Mattco resisted, contending deviation from that strict approach in favor of a valuation method was appropriate to the case being tried, and that the trial-within-a-trial standard was limited to attorney malpractice cases, a procedure Mattco suggested was in some disrepute. The trial court agreed with Mattco.

## a. *Case law support.*

In 1859, the California Supreme Court was presented with "an action against [a]ttorneys, to recover damage[s] for injuries alleged to have resulted from their negligent and unskillful [defense] of a cause in which they were retained by plaintiff." (*Hastings* v. *Halleck* (1859) 13 Cal. 203, 207.) In *Hastings,* "[t]he [c]ourt below instructed the jury 'that plaintiff had not proved any legal damages as resulting from [the attorneys'] neglect,' . . . " (*Id.* at p. 208.) *Hastings* found no error in the instruction. Without use of the phrase trial-within-a-trial, or any comparable language, *Hastings* held ". . . in order to charge the defendants with negligence in failing to set up such defense, he must show by evidence the existence of such facts, and that they were susceptible of proof at the trial by the exercise of proper diligence on the part of his [a]ttorneys." (*Id.* at p. 209.)

*Hastings* was only the beginning in a long line of cases adopting the trial-within-a-trial method of proof when an attorney is accused of losing a client's legal claim or defense.

In *Campbell* v. *Magana* (1960) 184 Cal.App.2d 751 [8 Cal.Rptr. 32], a leading case in the area, the appellant's counsel argued that ". . . a lawsuit (good or bad) is a chose in action, hence property, and that this one had an actual *value* other than that inhering in an existing right to recover; that it had a settlement or nuisance value which cannot be disregarded." (*Id.* at p. 753, italics added)

In response, *Campbell* v. *Magana* explained: "This argument cannot prevail for at least two reasons; first, it advances *speculative values as a measure of recovery*; and second, it violates an established rule of this state (and most others) that one who establishes malpractice on the part of his attorney in prosecuting or defending a lawsuit must also prove that careful management of it would have resulted in recovery of a favorable judgment and collection of same . . . ; that there is no damage in the absence of these latter elements, and the burden of proof rests upon the plaintiff to prove recoverability and collectibility of a plaintiff's claim . . . ." (184 Cal.App.2d at p. 754, italics added.)

*Campbell* v. *Magana* provides the rationale in support of an admittedly burdensome and complicated approach: it avoids "speculative values as a measure of recovery. . . ." (184 Cal.App.2d at p. 754.)

Later cases adopt the descriptive language of a trial-within-a-trial, suit-within-a-suit or case-within-a-case in applying and discussing the plaintiff's

burden. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 307 [250 Cal.Rptr. 116, 758 P.2d 58] [suit-within-a-suit]; *Arciniega* v. *Bank of San Bernardino* (1997) 52 Cal.App.4th 213, 223 [60 Cal.Rptr.2d 495] [case-within-a-case]; *Hinshaw, Winkler, Draa, Marsh & Still* v. *Superior Court* (1996) 51 Cal.App.4th 233, 242 [58 Cal.Rptr.2d 791, 796] [case-within-a-case]; *Fantazia* v. *County of Stanislaus* (1996) 41 Cal.App.4th 1444, 1455 [49 Cal.Rptr.2d 177] [trial-within-a-trial]; *Norton* v. *Superior Court* (1994) 24 Cal.App.4th 1750, 1758 [30 Cal.Rptr.2d 217] [suit-within-a-suit]; *United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 334 [282 Cal.Rptr. 368] [trial-within-a-trial]; *Sukoff* v. *Lemkin* (1988) 202 Cal.App.3d 740 [249 Cal.Rptr. 42], [retry]; *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 197 [231 Cal.Rptr. 791] [insurance malpractice case analogous to legal malpractice, suit-within-a-suit and trial-within-a-trial].)

Irrespective of phraseology used, California and foreign jurisdictions require the same burden. ■ *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], another leading case, succinctly stated: "The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]" (*Id.* at p. 200.)

In this court's most recent pronouncement on the subject, we quoted with approval the above language. (*DiPalma* v. *Seldman* (1994) 27 Cal.App.4th 1499, 1506 [33 Cal.Rptr.2d 219].)

### b.   *Criticism noted.*

The trial within-a-trial burden has been criticized because "[n]o matter how outrageous and morally reprehensible the attorney's behavior may have been, if minimal doubt exists as to the outcome in the original action, the plaintiff may not recover in the malpractice action." (Note, *The Standard of Proof of Causation in Legal Malpractice Cases* (1978) 63 Cornell L.Rev. 666, 670.) It also has been suggested that by placing the burden on plaintiffs to prove both the malpractice and the underlying lawsuit, they "face formidable problems of proof" (Bauman, *Damages for Legal Malpractice: An Appraisal of the Crumbling Dike and the Threatening Flood* (1988) 61 Temp. L.Rev. 1127, 1128) constituting "an evasion by the legal profession of its responsibility to its clients." (Koffler, *Legal Malpractice Damages in a Trial Within a Trial - a Critical Analysis of Unique Concepts: Areas of Unconscionability* (1989) 73 Marq. L.Rev. 40, 66.) Others note a trial-within-a-trial

"almost inevitably results in a confusion of two distinct questions, causation and injury" (Bauman, *Damages for Legal Malpractice: An Appraisal of the Crumbling Dike and the Threatening Flood, supra,* 61 Temp. L.Rev. at p. 1131; accord, Note, *A Modern Approach to the Legal Malpractice Tort* (1977) 52 Ind. L.Rev. 689, 694) and fails to recognize the realities of modern litigation. Since few cases go to trial, it has been suggested it is inappropriate to determine malpractice liability by reconstructing a trial that never would have occurred. (Note, *Loss of Chance in Legal Malpractice* (1986) 61 Wash. L.Rev. 1479.)

Nonetheless, while some arguments of the critics have merit, the trial-within-a-trial burden persists. (*DiPalma* v. *Seldman, supra,* 27 Cal.App.4th at p. 1506-1507; 4 Mallen & Smith, Legal Malpractice (4th ed. 1996) § 32.8, p. 168 et seq.; Rest.3d, The Law Governing Lawyers (Tent. Draft No. 7, Apr. 7, 1994) § 75, com. b, p. 52.) This is so probably because it is the most effective safeguard yet devised against speculative and conjectural claims in this era of ever expanding litigation. It is a standard of proof designed to limit damages to those actually *caused* by a professional's malfeasance. Certainly to date, no other approach has been accepted by the courts.

3.  *Policy considerations have led to application of the same burden to analogous professional negligence lawsuits in other fields.*

In response to Arthur Young's contentions below that the trial-within-a-trial burden should apply to try the negligence of Blumer, the accountant/litigation support person, the trial court opined the standard was only applicable to "lawyer negligence" because the different relationship gave "rise to a different set of responsibilities than any other professional."

In rejecting the trial court's reasoning, we would not be the first court to hold the same evidentiary approach is applicable in analogous situations where the claim is that professional negligence caused the loss of a lawsuit.

In today's technologically driven litigation, engineers, pathologists, serologists, physicians, appraisers, real estate brokers, and many other professionals, including accountants, frequently are hired to assist a party in preparing and presenting a legal case. "Often they play as great a role in the organization and shaping and evaluation of their client's case, as do the lawyers. Those who provide these services are selected for their skill and ability and are compensated accordingly just as any other professional." (*Murphy* v. *A. A. Mathews* (Mo. 1992) 841 S.W.2d 671, 682.) As experts, they are subject to liability if they perform the services negligently. (*Ibid.*)

Like other defendants in negligence lawsuits, litigation support professionals are only responsible for the losses they cause. (*Turpin* v. *Sortini*

(1982) 31 Cal.3d 220, 229-230 [182 Cal.Rptr. 337, 643 P.2d 954] [medical malpractice]; *Williams* v. *Wraxall* (1995) 33 Cal.App.4th 120, 130 [39 Cal.Rptr.2d 658] [forensic serologist malpractice].) Thus, in situations where alleged negligent conduct *is analogous to* an attorney's mishandling litigation, a plaintiff should be held to the same burden. (E.g., *Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d at pp. 196-198; [insurer]; cf. *American Home Assurance* Co. v. *Hagadorn* (1996) 48 Cal.App.4th 1898, 1909-1910 [56 Cal.Rptr.2d 536] [insurer alleges employee failed to give notice of claim].)

To illustrate, in *Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d 169, an insured brought a bad faith lawsuit against an insurer for damages alleging the insurer improperly conducted the defense of the insured's antitrust lawsuit. One theory presented was that the insured would have prevailed in the underlying trial if a proper defense had been provided and if the insured had not been forced to settle due to the insurer's negligent acts. (*Id.* at pp. 196-198.)

*Travelers* held "[g]iven the similarity between attorney malpractice cases and [the insured's] unique theory of damages in this case, we conclude that he should have been required to try the underlying . . . antitrust action within this bad faith action to sustain his claim that he would have successfully defended the [underlying case] but for [the insurance company's] acts and omissions." (*Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d at p. 197.)

Importantly, *Travelers* observed: "This trial within a trial avoids the specter that the damages claimed by a plaintiff are a matter of pure speculation and conjecture." (187 Cal.App.3d at p. 197.)

In *Williams* v. *Wraxall, supra,* 33 Cal.App.4th 120, the plaintiff, a former criminal defendant, brought a civil lawsuit against the forensic serologist hired to examine serological evidence, contending the serologist failed to disclose accurately his analysis results to the plaintiff's attorneys prior to the plaintiff's first criminal trial. On the issue of causation, *Williams* held the plaintiff had to retry his criminal case and "establish that he would have prevailed in the absence of [the serologist's] negligence." (*Id.* at p. 131.) Since there was no credible evidence indicating it was reasonably probable the plaintiff would have been acquitted had the serologist's test results been given to the criminal defense attorneys, the serologist could not be held liable. (*Id.* at pp. 133-134.)

a. *Foreign jurisdictions in accord.*

In *Schaffer* v. *Donegan* (1990) 66 OhioApp.3d 528 [585 N.E.2d 854], a physician expert was hired in a *medical* malpractice case to provide assistance and testimony against surgeons who previously had treated the plaintiff. Prior to trial, the expert changed his mind and stated he would not testify the treating physicians had caused plaintiff's injuries. Plaintiff settled the medical malpractice case and then sued the expert. Plaintiff lost and appealed. *Schaffer* rejected plaintiff's contention the jury improperly had been charged relating to the burden of proof. *Schaffer* stated, "[Plaintiff] suffered no injuries unless the *surgeons* were negligent . . . . Only then could any negligence of [the expert] have produced damages." (*Id.* at p. 860, italics added.)

Similarly, in *Rodgers* v. *St. Mary's Hosp. of Decatur* (1990) 198 Ill.App.3d 871 [145 Ill.Dec 295, 556 N.E.2d 913] affirmed 149 Ill.2d 302 [173 Ill.Dec. 642, 597 N.E.2d 616], in a lawsuit against a hospital for spoliation of evidence, the court stated the plaintiff would have to prove the loss of the X-rays caused the loss of the underlying malpractice case against the defendant radiologists. (556 N.E.2d at p. 919; compare with, *Honeywell* v. *American Standards Testing Bureau* (3d Cir. 1988) 851 F.2d 652 [in case against expert for malpractice, no need to recreate underlying trial as damages were known].)

In *Beeck* v. *Kapalis* (Iowa 1981) 302 N.W.2d 90, affirmed *sub nomine Beeck* v. *Aquaslide 'N' Dive Corp.* (Iowa 1984) 350 N.W.2d 149, the plaintiff was injured using a water slide. Plaintiff sued Aquaslide, believing Aquaslide was the manufacturer. In discovery responses, Aquaslide admitted it manufactured the slide. After the statue of limitations had run, Aquaslide discovered the slide was manufactured by another company. Since plaintiff no longer could pursue the action for personal injuries, plaintiff sued Aquaslide for misrepresentation, alleging Aquaslide's statements caused him to lose an otherwise valid cause of action against the true manufacturer. The Supreme Court of Iowa applied the standard applicable in legal malpractice cases, concluding plaintiff had to prove that had there been no misrepresentation, the plaintiff would have been successful on the underlying cause of action against the true manufacturer. (302 N.W.2d at p. 94.)

Another example appears in *Universal Ideas* v. *Linn County* (1983) 64 Or.App 805 [669 P.2d 1165], wherein the plaintiff sued the county clerk for failure to mail timely notice to plaintiff that judgment had been entered against it, foreclosing plaintiff's appeal rights. Since the case was similar to a legal malpractice action, *Universal Ideas* stated there would have to be a

determination that had plaintiff been able to file an appeal, plaintiff would have prevailed in the appeal.

> b. *Given the nature of Mattco's lawsuit against Arthur Young, the trial court erred in relieving Mattco of the trial-within-a-trial burden of proof.*

■ Arthur Young, as an accountant, was subject to professional liability. (*Lindner* v. *Barlow, Davis & Wood* (1962) 210 Cal.App.2d 660, 665 [27 Cal.Rptr. 101]; *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 200; 3 Levy et al., California Torts (1996) § 30.01[1], p. 30-5.)

As set forth, Mattco's lawsuit was based on Arthur Young's malpractice in allegedly negligently providing accounting litigation support services, thereby ruining Mattco's federal lawsuit against GE, resulting in the loss of Mattco's legal claim. Thus, Mattco's cause of action is analogous to a malpractice case in which an attorney is accused of losing a plaintiff's case through negligence, and the same evidentiary burden applies. Therefore, in order to prevail against Arthur Young in this action, Mattco has the burden to establish that had Arthur Young properly handled the underlying case, Mattco would have prevailed against GE.[7]

### 4. *Erroneous instructions require reversal.*

Once the trial court started down its chosen path, erroneous instructions were sure to follow.

---

[7]Mattco points to *Walker* v. *Porter* (1974) 44 Cal.App.3d 174 [118 Cal.Rptr. 468] (client in legal malpractice case can be successful even though the client could not prove which of the three original codefendants caused her personal injuries) and *Smith* v. *Lewis* (1975) 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231], overruled on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, footnote 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] (attorney responsible to client for failing to conduct research on unsettled area of law) to suggest California has moved away from adherence to the case-within-a-case standard of proof. This is an imprecise reading of these cases.

Mattco also cites *Clemente* v. *State of California* (1985) 40 Cal.3d 202 [219 Cal.Rptr. 445, 707 P.2d 818] to argue the case-within-a-case method should not be used. In *Clemente,* a pedestrian struck by a motorcycle sued a highway patrol officer for negligently investigating the accident. In discussing damages, the Supreme Court rejected the defendant's contention plaintiff had to prove the lawsuit against the motorcyclist would have resulted in a collectible judgment. *Clemente* focused on the collectibility aspect of the argument and stated it would be unfair to place that burden on the plaintiff inasmuch as the essence of plaintiff's case against the highway patrol officer was the officer's negligence prevented plaintiff from ascertaining the *identity* of the motorcyclist and thus from determining if a judgment would have been collectible. (*Id.* at pp. 218-221.) Here, however, there were no suggestions Arthur Young's negligence made it more difficult for Mattco to identify the offending party in the underlying action. Further, Arthur Young's purported negligence did not destroy Mattco's ability to prove the underlying federal case.

■ In general, key concepts must be articulated in instructions to assure every essential element has been proven. (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298]; *Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33], disapproved on other grounds in *Soule* v. *General Motors Corp.*, *supra*, 8 Cal.4th at pp. 574, 580; *Hilliard* v. *A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 403 [196 Cal.Rptr. 117]; cf. *Sukoff* v. *Lemkin*, *supra*, 202 Cal.App.3d at p. 744.)

On review, "A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, . . . the error complained of has resulted in a miscarriage of justice.' [Citation.] . . . [¶] Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.] Of course, that determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury. [¶] . . . Actual prejudice must be assessed in the context of the individual trial record. . . . [W]hen deciding whether an error of instructional omission was prejudicial, the [reviewing] court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule* v. *General Motors Corp.*, *supra*, 8 Cal.4th at pp. 580-581.)

a. *Arthur Young's proffered instructions incomplete and misleading statements of law.*

■ In accordance with Arthur Young's trial theory that Mattco had to prove it would have prevailed against GE *in the specific federal trial before Judge Gadbois*, Arthur Young submitted its instructions.

In phase 1, Arthur Young proffered the following: "A plaintiff is only entitled to recover damages to the extent that they resulted from loss or harm caused by the defendant. Under the law, defendant's conduct 'caused' plaintiff's loss or harm if that conduct was a substantial factor in bringing it about. . . ."

Arthur Young also submitted: "In order to recover damages from a damages consultant or expert trial witness for negligence in the handling of a litigation services engagement, the plaintiff must not only establish that the consultant or expert witness was negligent, but also must establish that *but for* such negligence, the plaintiff *would have proceeded to trial in the prior lawsuit,* and that that lawsuit would have resulted in a collectible judgment

in plaintiff's favor. [¶] In this phase of the trial, you are to decide only whether Arthur Young was negligent and whether Mattco would have been able to proceed to trial [and that Mattco's lawsuit would have resulted in a collectible judgment] in its case against G.E. *but for* such negligence." (This is a modified version of BAJI No. 6.37.5, italics added.)

In addition to utilizing the "but for" language rejected in *Mitchell* v. *Gonzales, supra,* 54 Cal.3d 1041, the italicized language was faulty because it focused on how Judge Gadbois in particular would have disposed of the underlying case, rather than on how a reasonable judge would have ruled, which is an *objective* standard.

Arthur Young's trial theory appeared to rest on its assumption it could put before this jury all of the federal judge's comments and rulings regarding Mattco's misconduct in its discovery with GE. In light of its analysis that Mattco's case against GE was doomed in the federal court, Arthur Young proffered in evidence an expert who would testify Judge Gadbois eventually would have dismissed the federal lawsuit in further rulings.[8] To support this motion, Arthur Young sought to introduce the sanction orders as well as evidence on the merits of the motions to show how *Mattco's misconduct* affected the value of its case against GE. However, the trial court admitted only the finding of the federal judge that Mattco and Minguez fabricated evidence, and ruled the judge's other comments irrelevant. The trial court further ruled how *Judge Gadbois* would have disposed of the case was speculative.[9]

Arthur Young contended to the trial court that since it stepped into GE's shoes in defense, it should have been able to place into evidence not only all evidence relevant to GE's counterclaim, but also all evidence of Mattco's egregious misconduct in discovery, including Mattco's fabrication and destruction of evidence and perjury. Arthur Young explained this evidence was

---

[8]At the end of phase 1, Arthur Young was *not* allowed to argue to the jury Mattco had to prove it would have proceeded to trial against GE. However, Arthur Young repeatedly presented its theory Mattco was trying to blame Arthur Young for its conduct in the federal court and that had the matter proceeded, Judge Gadbois would have dismissed the case. For example, Arthur Young argued before the jury "Mattco never got anywhere near the courthouse in the General Electric case [because Mattco and Minguez] knew their case was dead in the water against General Electric. They knew that General Electric had come up with hard evidence of wrongful conduct in discovery that barred their case against General Electric; that Judge Gadbois was prepared to dismiss that case, and he would have done so. That did not have anything to do with Arthur Young. The writing was clearly on the wall in Judge Gadbois' sanction order."

[9]Arthur Young was permitted to introduce evidence relating to the federal motions to dismiss for the limited purpose of refuting Minguez's claim the only reason he dismissed the federal case was because he could not afford to pay the $1.4 million sanction.

admissible to prove these acts would have caused the *federal judge to dismiss the case*. According to Arthur Young, if it could prove Judge Gadbois would have dismissed the federal lawsuit, Arthur Young would not have had to address the merits of Mattco's racial discrimination claim. Arthur Young contended its legal expert witness should have been allowed to express his opinion that Judge Gadbois would have granted GE's dismissal motion, thus ending Mattco's legal claim against GE.

Mattco countered to the trial court that Arthur Young fundamentally misapprehended the issues in the trial. As it did below, Mattco avers on appeal that, "[f]rom the beginning of the trial, Arthur Young took the position that the basic question for the jury was how the underlying case 'would have' been resolved if Judge Gadbois had ruled on the motions to dismiss. This approach . . . was utterly wrongheaded. It is the universal rule that the elements of causation and damages . . . require the determination of what '*should* have' happened in the underlying case (an objective determination of how a *reasonable* trier of fact would have decided the case), not what '*would* have' happened (a subjective determination of how a *particular* trier of fact would have decided the case)."

In our review of the federal judge's rulings and remarks, we find it highly likely a different federal judge would have ruled differently. We agree with Mattco's argument that Arthur Young's proffered instruction and its arguments were fatally flawed as they focused on what *Judge Gadbois* would have done had Mattco paid the sanctions and attempted to go forword with its lawsuit against GE.

The trial-within-a-trial method does not "recreate what a particular judge or fact finder would have done. Rather, the jury's task is to determine what a reasonable judge or fact finder would have done . . . ." (*Brust* v. *Newton* (1993) 70 Wn.App. 286 [852 P.2d 1092, 1095].) Even though "should" and "would" are used interchangeably by the courts, the standard remains an *objective* one. The trier of facts determines what *should* have been, not what the result *would* have been, or could have been, or might have been, had the matter been before a *particular judge* or jury. (*Phillips* v. *Clancy* (1986) 152 Ariz. 415 [733 P.2d 300]; *Harline* v. *Barker* (Utah 1996) 912 P.2d 433, 441; *Justice* v. *Carter* (8th Cir. 1992) 972 F.2d 951, 956-957; 4 Mallen & Smith, Legal Malpractice, *supra*, § 32.1, pp. 127-129.)

(1) *Arthur Young may still complain about erroneous instructions given.*

Notwithstanding Arthur Young's proffered instructions missed the mark, Arthur Young is not precluded from complaining about the erroneous instructions the trial court did give. In *Suman* v. *BMW of North America* (1994)

23 Cal.App.4th 1 [28 Cal.Rptr.2d 133], a buyer of an automobile sued the seller. On appeal the buyer contended provisions of a consumer act had been improperly construed by the trial court and the instructions related thereto were incorrect. The seller argued the buyer had waived the right to contest the jury instructions because the buyer never offered his own instructions on that issue. We concluded the buyer had the right to complain about the error on appeal.

■ "When a trial court gives a jury instruction which is correct as far as it goes but which is too general or is incomplete for the state of the evidence, a failure to request an additional or a qualifying instruction will waive a party's right to later complain on appeal about the instruction which was given. [Citation.] *However, when a trial court gives a jury instruction which is prejudicially erroneous as given, i.e., which is an incorrect statement of law,* the party harmed by that instruction need not have objected to the instruction *or proposed a correct instruction of his own* in order to preserve the right to complain of the erroneous instruction on appeal. [Citation.]" (23 Cal.App.4th at p. 9, italics added.)

b. *Trial court's instructions erroneous and prejudicial.*

Mattco contends the issues of causation and damages were properly tried, and claims Mattco in fact presented a case-within-a-case. It argues the "trial court permitted an exhaustively thorough airing of every claim and defense that both sides had," and allowed complete argument. Indeed, during the four-month trial, extensive evidence was introduced.

■ However, it is not a failure of facts that is the pivotal issue before us. Rather, the prejudice occurs because of the erroneous *law* the trial court instructed the jurors to apply to those *facts*. Even under Mattco's theory of the case, the trial court's instructions were inadequate at the least. And even assuming the evidence came in as a trial-within-a-trial, as claimed by Mattco, the instructions were wrong and misleading, and left the jurors in a sea of speculation and conjecture, just what the trial court assiduously sought to avoid.

To reiterate, at the end of the *liability* phase of the trial, the trial court instructed the jury: ". . . you are only to determine if the actions of the defendants caused the plaintiffs to suffer harm. If you determine that the actions of the defendants caused the plaintiffs to suffer harm, you will be asked in the next phase to determine the extent of the harm suffered by plaintiffs and the amount of damages to be awarded to plaintiffs."

Omitted from the charge to the jury was the essential element of a causal connection between Arthur Young's negligent conduct and the harm suffered by Mattco. The conduct of Arthur Young in the calculation of Mattco's

lost profits was shown to be negligent. But the triers of fact also must find that Arthur Young's negligence caused the loss of Mattco's claim against GE in order to reach a verdict in favor of Mattco. Arthur Young cannot be held liable for Mattco's own defalcations which may have contributed to the loss of its legal claim against GE.

Given the state of the evidence, any jury would have found Arthur Young's actions were at least a cause of the harm. Once it made this finding, and given the argument and instructions that any case would have some intrinsic value, the jury was free to assign a value to Mattco's lawsuit against GE. The lack of a proper *causation* instruction permitted Mattco to escape its burden of proving Arthur Young's negligence *caused* Mattco to lose its lawsuit against GE.

Unlike *Soule* v. *General Motors Corp., supra*, 8 Cal.4th at pages 581-582, this is not a situation in which other instructions encompassed the concept and a party merely was denied a further explanation.

Moving on to the phase 2 instruction dealing with damages, the jurors were instructed: "Having found that Plaintiff Mattco is entitled to a verdict against [Arthur Young], you must award [Mattco] damages in an amount which will reasonably compensate for each of the following elements of claimed loss, provided that you find that such loss was suffered by [Mattco] and caused by the act or omission upon which you base your findings of liability. The amount of such award may include: [¶] (1) The *value* of Mattco's case against G.E.; [¶] (2) Out-of-pocket expenses; and in your discretion, [¶] (3) Interest on out-of-pocket expenses." "One element of the damages that the plaintiffs claim from the Arthur Young Parties is the reasonable value of the claims which the plaintiff had against GE in light of the defenses and counterclaim which GE had against the plaintiff." "*No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for the loss of a legal claim.* In making an award for the *value* of the case, you shall exercise reasonable judgment and the damages you fix shall be just and reasonable in light of the evidence." (Italics added.)

However, there *is* a "definite standard" and a "method of calculation" for the loss of a legal claim, and those elements are ascertained by the trial-within-a-trial approach, accompanied by proper instructions.

In addition to being vague in calling for jurors merely to assess the *value* of the entire case, the "just and reasonable" elaboration does not provide much additional guidance. In criticizing the simple valuation approach,

*Campbell* v. *Magana, supra,* 184 Cal.App.2d 751, stated the theory "advances speculative values as a measure of recovery. . . ." (*Id.* at p. 754.) As noted, *Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d 169, endorsed the trial-within-a-trial approach so as to avoid "the specter that the damages claimed by a plaintiff are a matter of pure speculation and conjecture." (*Id.* at p. 197.) Also, to enable a plaintiff merely to value a case renders professionals liable as guarantors, as almost all cases have some value. (4 Mallen & Smith, Legal Malpractice, *supra,* § 32.8, p. 170.)

Again, what was missing was the element requiring Mattco to prove "that careful management of [Mattco's lawsuit] would have resulted in recovery of a favorable judgment and collection of same" (*Campbell* v. *Magana, supra,* 184 Cal.App.2d at p. 754), and proving that the actual loss or damage resulted from Arthur Young's negligence. (*DiPalma* v. *Seldman, supra,* 27 Cal.App.4th at p. 1506.) Such an instruction also would have put in issue *Mattco's* misconduct in the underlying lawsuit against GE.

Lastly, contrary to Mattco's argument, the amount of the verdict does not necessarily indicate the jury found for Mattco on all vital issues. In the trial, Mattco argued that even if the case were a 50/50 proposition, the case was "worth" at least $10 million. Thus, when the jury rendered a verdict for compensatory damages as to the value of Mattco's federal lawsuit in the sum of $13.2 million, it was not necessarily concluding Mattco would have won its lawsuit against GE, but rather Mattco had a *chance* of winning. Since the burden was not placed properly on Mattco, the jury was asked to speculate in reaching its results.

For these reasons, we cannot affirm the judgment.[10]

c. *A proper instruction is a modified BAJI No. 6.37.5.*

As noted, at the close of the liability phase of the trial, the trial court correctly instructed the jury with BAJI No. 3.76 to the effect, "[a] cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm."

At the same time, the jury was advised that if it found harm, it would be asked in the next phase "to determine the extent of the harm suffered by plaintiffs and the amount of damages to be awarded to plaintiffs."

---

[10]In addition to the instructions being erroneous and prejudicial, the verdict form submitted to the jury was imprecise. Evidence was introduced on three causes of action: fraudulent misrepresentation, fraudulent concealment and professional malpractice and the evidence overlapped and intertwined. Instructions after phase 1 included those applicable to the fraud counts. The special verdict form called for jury findings on the three causes of action. However, there was only a *single* verdict of $13.2 million as the *value* of Mattco's case against GE. Therefore, the entire verdict, with the exception of the out-of-pocket expenses and interest which were specifically provided for, must fall.

Because the trial court had not been utilizing the trial-within-a-trial standard of proof, which would have required Mattco to prove a causal connection between Arthur Young's negligent conduct and the resulting harm and damage (*Budd* v. *Nixen, supra*, 6 Cal.3d at p. 200; *DiPalma* v. *Seldman, supra*, 27 Cal.App.4th at p. 1506), following phase 2, the trial court gave incorrect valuation instructions. The jurors were instructed simply to *value* Mattco's case against GE. The valuation approach has no support in California case law because ". . . it advances speculative values as a measure of recovery. . . ." (*Campbell* v. *Magana, supra*, 184 Cal.App.2d at p. 754.)

*Hastings* v. *Halleck, supra*, 13 Cal. 203 specifically discusses instructions applicable to the trial-within-a-trial burden of proof. While the language used therein is correct as far as it goes, i.e., plaintiff had to prove legal damages resulting from the professional negligence, *Hastings* preceded BAJI No. 6.37.5 by at least 100 years![11]

██ It would appear BAJI No. 6.37.5 most closely approximates a usable instruction which the abundant case law contemplates in professional negligence cases and has been used for that purpose. (E.g., *Jackson* v. *Johnson* (1992) 5 Cal.App.4th 1350, 1356 [7 Cal.Rptr.2d 482]; cf. *DiPalma* v. *Seldman, supra*, 27 Cal.App.4th at p. 1507.) However, it requires some modification to eliminate the "but for" language and to substitute the substantial factor test. Also, the principles articulated in BAJI No. 6.37.5 are not limited to attorney negligence, as clearly expressed herein.

Therefore, in the event of a retrial in this case, or in a comparable fact situation, we suggest a possible modification, not to the exclusion of others, as follows: "In order to recover damages from a professional for negligence in the handling of a lawsuit, which negligence resulted in the plaintiff's loss of the prior lawsuit, the plaintiff must establish: (1) the professional was negligent in the handling of the prior lawsuit; (2) the professional's negligence was a substantial factor in the plaintiff's loss of the prior lawsuit; and (3) the proper handling of the prior lawsuit by the professional would have resulted in a collectible judgment in plaintiff's favor."

Guided by such an instruction, the jury will be able to determine whether Arthur Young is liable to Mattco for its role in the handling of the underlying federal action.

---

[11]BAJI No. 6.37.5 reads: "In order to recover damages from an attorney for negligence in the handling of a lawsuit, the plaintiff must not only establish that the attorney was negligent but also must establish that but for such negligence the prior lawsuit [*would* have resulted in a collectible judgment in plaintiff's favor] [would have been successfully defended]." (Italics added.)

### 5. *Out-of-pocket expenses and interest thereon upheld.*

The nature of Mattco's damages arose from two distinct theories, both based upon Arthur Young's negligent conduct.

In addition to arguing it was entitled to the value of the loss of the legal claim against GE, Mattco argued it was entitled to its out-of-pocket expenses incurred in *defending* the numerous discovery and dismissal motions in the federal case, including accounting and attorney fees. This contention was based upon Mattco's claim that had it not been for Arthur Young's inept process of calculating damages, Mattco never would have created 26 new estimate sheets and it never would have been placed in the position of defending its damage calculation based upon those estimate sheets. Mattco suggested this error changed the focus of the federal lawsuit from the merits to a war over sanction and dismissal motions, and caused it to spend approximately $1 million in defending the motions. On this area of damages, the jury awarded approximately $1 million, plus interest.[12]

On appeal, Arthur Young has not presented any argument to demonstrate why the damage award for out-of-pocket expenses, and interest thereon, is unsupported either in law or by the facts. The jury was instructed it could determine the amount of out-of-pocket losses as those expenses "reasonably required by the acts upon which [it] based [its] finding of liability and which can be documented by bills, canceled checks and business records." The parties presented evidence on this aspect of damages, and after there was a finding of liability, Arthur Young virtually conceded such an award would be reasonable.

It is Arthur Young's burden to demonstrate why each part of the verdict cannot withstand scrutiny. With regard to the out-of-pocket losses, and the interest on these expenses, Arthur Young has not met its burden. Thus, this part of the judgment must be affirmed.

### 6. *Arthur Young's unclean hands contention again fails.*

Prior to trial, Arthur Young moved for summary judgment, contending Mattco's unclean hands during the federal action barred Mattco's lawsuit as a matter of law. After its motion was granted, this court reversed, holding the federal court did not adjudicate any dispute between Mattco and Arthur

---

[12]The jury apparently awarded Mattco exactly the amount it requested for its out-of-pocket expenses in the space provided in the special verdict form. Evidence offered supporting the $995,717.38 award included: $45,567 for fees paid to Arthur Young; $59,500 for fees paid to another accounting firm; and $890,650.38 for legal fees expended to combat the federal discovery and sanction motions.

Young. (*Mattco Forge, Inc.* v. *Arthur Young & Co., supra,* 5 Cal.App.4th at p. 407.) That opinion followed the general rule on unclean hands. Thereafter, Arthur Young again raised the defense of unclean hands during trial. The trial court instructed the jury on this defense, "[t]o establish [the defense of unclean hands], the Arthur Young Parties must prove by a preponderance of the evidence that [Mattco's] conduct was wrongful, inequitable or unconscionable and *resulted in prejudice to [Arthur Young.]*" (Italics added.) Arthur Young objected, arguing for a deletion of the words, "resulted in prejudice to Arthur Young." It repeats that argument on this appeal, and in addition, raises a new theory.

■ The defense of unclean hands arises from the equitable maxim, " 'He who comes into Equity must come with clean hands.' " (*Blain* v. *Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1059 [272 Cal.Rptr. 250].) While this equitable doctrine is "a vehicle for affirmatively enforcing the requirements of conscience and good faith" (*Precision Co.* v. *Automotive Co.* (1945) 324 U.S. 806, 814 [65 S.Ct. 993, 997, 89 L.Ed. 1381]), it " 'cannot be distorted into a proceeding to try the general morals of the parties.' " (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 729 [39 Cal.Rptr. 64]; *Unilogic, Inc.* v. *Burroughs Corp.* (1992) 10 Cal.App.4th 612, 621 [12 Cal.Rptr.2d 741].) The issue is not that the plaintiff's hands are dirty, but rather " ' "that the manner of dirtying renders inequitable the assertion of such rights against the defendant." ' " (*Martin* v. *Kehl* (1983) 145 Cal.App.3d 228, 239-240, fn. 1 [193 Cal.Rptr. 312].) "The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists, supra,* 227 Cal.App.2d at p. 728; *Vacco Industries, Inc.* v. *Van Den Berg* (1992) 5 Cal.App.4th 34, 52 [6 Cal.Rptr.2d 602].) Thus, there must be a direct relationship between the misconduct and the claimed injuries. (*Unilogic, Inc.* v. *Burroughs Corp., supra,* 10 Cal.App.4th at p. 620.) Equity will grant relief when a plaintiff's conduct " 'prejudicially affect[s] the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.' " (*Martin* v. *Kehl, supra,* 145 Cal.App.3d at pp. 239-240, fn. 1.)

In its new theory, Arthur Young now argues that when the unclean acts constitute a "fraud on the court," the improper acts need not have prejudiced the other party. Arthur Young asserts the equitable concept of unclean hands transcends the relationship between the parties and is intended to prevent parties from abusing the system. Arthur Young claims the federal court found Mattco had destroyed documents and its vice-president had committed

perjury, and that these acts constituted a fraud on the court and the judicial process. Arthur Young contends this finding should preclude Mattco from recovering in its accounting malpractice lawsuit.

Because this theory is presented for the first time on appeal, this court will not consider it. ■ Arthur Young's appellate effort is contrary to the rule that parties are not permitted to " 'adopt a new and different theory on appeal. To permit [them] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' [Citations.]" (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397]; *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664].) Only when the issue presented involves purely a legal question, on an *uncontroverted record and requires no factual determinations,* is it appropriate to address new theories. (*Ibid.*; *Palmer* v. *Shawback* (1993) 17 Cal.App.4th 296, 300 [21 Cal.Rptr.2d 575].)

Even if we were to accept the legal concept in Arthur Young's new theory, we are foreclosed from addressing it as the issue does not arise on an uncontroverted record. The federal court orders did not specifically find Mattco destroyed documents. At the time the federal action was dismissed, the federal court had not completed its rulings on discovery issues, and the federal orders are ambiguous. Additionally, throughout this lawsuit, Mattco denied destroying documents. The record before us is hardly "uncontroverted," and many "factual determinations" would be required.[13]

We conclude the trial court's instruction on this issue was correct.

7. *No error in the clear and convincing burden of proof instruction.*

■ Arthur Young contends the trial court erred in the third phase of the trial by instructing the jury with BAJI No. 2.62 — Burden of Proof and Clear and Convincing Evidence, and in not accepting its proposed modification thereto.

We perceive no error in the given instruction. As stated in *Roberts* v. *Ford Aerospace & Communications Corp.* (1990) 224 Cal.App.3d 793 [274

---

[13]Arthur Young does not contend Mattco committed a "fraud on the court" by fabricating documents, i.e., the 26 estimate sheets. The $1.4 million sanction order was due in part to their fabrication, and the responsibility for such acts was the essence of Mattco's lawsuit against Arthur Young and was the subject of much controversy. Minguez consistently maintained he was unaware of the significance of the documents in the discovery process. Arthur Young claimed Minguez was aware of the consequences of his actions and also that Helmer and Neff were told the 26 documents were newly created. Helmer and Neff, on the other hand, stated they did not know of the origin of these estimate sheets until after they had been given to GE in discovery.

Cal.Rptr. 139], BAJI No. 2.62 is a correct statement of the law. (224 Cal.App.3d at p. 804.) Further, it is well settled that courts are not required to use any particular phraseology, as long as an instruction correctly states the law. (*Byrum* v. *Brand* (1990) 219 Cal.App.3d 926, 939 [268 Cal.Rptr. 609]; *People* v. *Jenkins* (1973) 34 Cal.App.3d 893, 899 [110 Cal.Rptr. 465].)

Nonetheless, Arthur Young contends the jury was not properly instructed with respect to the definition of clear and convincing evidence. To explain and define the clear and convincing burden of proof as required to prove punitive damages (Civ. Code, § 3294), the trial court instructed with BAJI No. 2.62 as follows: " 'Clear and convincing' evidence means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts for which it is offered as proof. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence."[14]

In arguing this instruction was insufficient, Arthur Young proposed more rigorous language and suggested the following two sentences be added: "The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating agreement of every reasonable mind."

This proposed language originated in *Sheehan* v. *Sullivan* (1899) 126 Cal. 189 [58 P. 543] and subsequently has been cited with approval.[15] (E.g., *In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198].) However, neither *Sheehan,* any subsequent case, nor the Legislature has held that to define clear and convincing correctly, Arthur Young's proffered additional phraseology is mandated.

In *In re Angelia P.*, *supra,* 28 Cal.3d 908, a case involving the termination of parental rights, the Supreme Court discussed the three levels of proof, i.e., preponderance of the evidence, clear and convincing, and beyond a reasonable doubt. *Angelia P.* first acknowledged that absent a statute, in a civil lawsuit between private parties, the "preponderance of the evidence standard . . . seems peculiarly appropriate. . . ." (*Id.* at p. 918.) *Angelia P.* then went on to reject the parents' argument that proof beyond a reasonable doubt should be required before parental rights were terminated.

*Angelia P.* concluded in such situations, proof must be by an intermediate burden, by clear and convincing evidence. *Angelia P.* defined such burden as

---

[14]Here, in both phase one and phase two the jury had been given a definition of the preponderance of the evidence standard.

[15]In the second sentence, Arthur Young used the word "agreement," rather than "assent," as used in *Sheehan* and *Angelia P.*

"requir[ing] a finding of high probability." (28 Cal.3d at p. 919.) It then cited to *Sheehan* to further describe the burden, using the language from *Sheehan* submitted by Arthur Young. In its discussion, however, *Angelia P.* did not consider the seven other characterizations of clear and convincing mentioned in *Sheehan. Nor did Angelia P. mandate the use of any particular phraseology to ascertain the proper burden.*

Without an additional mandate from the Supreme Court or the Legislature, BAJI No. 2.62 remains a correct instruction. (*Roberts* v. *Ford Aerospace & Communications Corp., supra,* 224 Cal.App.3d at p. 804.)

Further, we observe the restrictive language proposed by Arthur Young seems to impose a burden approaching the criminal burden, proof beyond a reasonable doubt.

In a criminal prosecution, a court is required to instruct a jury that "[r]easonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." (CALJIC No. 2.90, based on *People* v. *Freeman* (1994) 8 Cal.4th 450, 504, & fn. 9 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888].)

The language proposed by Arthur Young, and our esteemed colleague in his concurring and dissenting opinion, would require proof "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." A comparison of that language and the reasonable doubt instruction readily points up the problem. There is essentially no difference between requiring proof that "leaves no substantial doubt" and that "commands the unhesitating assent of every reasonable mind" and the criminal definition of reasonable doubt. Arthur Young has not shown that in enacting Civil Code section 3294, the Legislature intended to require a civil litigant seeking punitive damages to meet the burden required of the People in a criminal prosecution.

Further, the "unhesitating assent of every reasonable mind" language improperly implies that juror unanimity is required for an award of punitive damages. (Cal. Const., art. I, § 16.) Arthur Young's proposed instruction containing this language would have misled the jury and properly was refused.

Lastly, Arthur Young can point to no case which still has precedential value requiring the modified instruction which it proffered. Rather, for its

argument, Arthur Young only cites to dicta in three cases from this court. (*Mock* v. *Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 332-333, & fn. 29 [5 Cal.Rptr.2d 594]; *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 487, fn. 8 [273 Cal.Rptr. 696]; *DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 566, fn. 19 [282 Cal.Rptr. 181].) Dicta is not authority upon which we can rely. (*In re San Diego Commerce* (1995) 40 Cal.App.4th 1229, 1234-1235 [47 Cal.Rptr.2d 303].)[16]

### 8. *Minguez has waived his cross-appeal.*

The complaint against Arthur Young included causes of action filed solely on behalf of Minguez, namely, violation of civil rights and intentional infliction of emotional distress. At the close of phase two, the trial court granted Arthur Young's motion for directed verdict aimed at those two causes of action. In a page and a half, and with citation to but one case for the general proposition the conduct was despicable, Minguez cross-appeals from the granting of the directed verdict motion. This cursory treatment requires no discussion by us. (*Huntington Landmark Adult Community Assn.* v. *Ross* (1989) 213 Cal.App.3d 1012, 1021 [261 Cal.Rptr. 875]; *Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].)

### DISPOSITION

The judgment is reversed as to Mattco's award of damages, except the portion that awarded Mattco out-of-pocket-expenses and interest thereon, which is affirmed.

The judgment for Arthur Young against Minguez is affirmed.

The parties are to bear their respective costs on appeal.

Aldrich, J., concurred.

**CROSKEY, J.,** Concurring and Dissenting.—With but one exception, I concur with the thoughtful and well-reasoned opinion of my colleagues. However, that exception is important as it relates to the very significant question of what jurors should be told about the "clear and convincing" evidentiary standard they are required to apply in determining a defendant's

---

[16]The concurring and dissenting opinion correctly indicates the majority agreed in the cited cases. However as noted, the rigorous recommended language was dicta. The last case was decided in 1992, and BAJI No. 2.62 has been in continual use before and after. That state of affairs, and further reflection, has caused a change in our stance.

liability for punitive damages. Regrettably, I must dissent from the majority opinion's analysis and discussion of this issue and from the resulting withdrawal from previously asserted declarations by this court regarding the inadequacy of BAJI No. 2.62.[1]

One of the important changes in the law made by the Willie L. Brown Jr.-Bill Lockyer Civil Liability Reform Act of 1987 was to increase the evidentiary threshold which must be met in order to justify a recovery of punitive damages. Civil Code section 3294, subdivision (a), now requires that a party seeking punitive damages must prove the existence of fraud, malice or oppression by "clear and convincing" evidence. This represents an important change in the law and is in line with a number of procedural and substantive changes which have been made by the Legislature over the past 15 years to limit and make more burdensome the recovery of punitive damages. (*College Hospital Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 712-713 [34 Cal.Rptr.2d 898, 882 P.2d 894]; *Mock* v. *Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 332-333 [5 Cal.Rptr.2d 594].)[2]

---

[1]BAJI No. 2.62 defines the evidentiary standard in the following terms:
" 'Clear and convincing' evidence means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the fact[s] for which it is offered as proof. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence."

[2]In *College Hospital*, the Supreme Court recently summarized these changes: "Beginning in 1979, various procedural restrictions were enacted. The Legislature limited the circumstances under which evidence of the defendant's financial condition could be discovered and admitted, authorized bifurcation of the punitive damages phase of trial, and barred disclosure of the amount of punitive damages sought in the complaint. (Civ. Code, § 3295, subds. (a)-(e).) These provisions were apparently intended to curtail use of such claims as a tactical ploy. The pretrial discovery limits ensure that defendants are not coerced into settling suits solely to avoid unwarranted intrusions into their private financial affairs, while the evidentiary restrictions minimize potential prejudice to the defense in front of a jury. [Citations.] [¶] In 1980, the Legislature began modifying the substantive elements of punitive damage awards. It limited the circumstances under which an employer could be held liable for punitive damages 'based upon acts of an employee.' (Civ. Code, § 3294, subd. (b).) At the same time, the concepts of 'oppression,' 'fraud,' and 'malice' were given specific definitions. (*Id.*, § 3294, subd. (c).) . . . [¶] Additional requirements were imposed by the [1987 Reform Act]. [It] amended Civil Code section 3294 by increasing the plaintiff's burden of proving punitive damages at trial to 'clear and convincing evidence.' The definition of 'malice' was also refined. For plaintiffs attempting to prove malice by showing a 'conscious disregard' of their rights as opposed to an actual intent to harm, the [statute] imposed additional requirements of 'despicable' and 'willful' defense conduct. [¶] [Finally, it] also added section 425.13 to the Code of Civil Procedure. [That] statute imposes certain pretrial procedural requirements on plaintiffs attempting to plead a punitive damages claim against a health care provider. It is not the only statute of its kind. Between 1988 and 1992, several similar provisions, covering both compensatory and punitive damage claims, were added to the Code of Civil Procedure. (§§ 425.14 [punitive damages claim against religious corporation], 425.15 [negligence claim against volunteer director or officer of nonprofit corporation], 425.16 ['SLAPP' suit affecting right of petition/free speech]; see also Civ. Code, §§ 1714.10 [conspiracy claim against

The clear and convincing standard of proof is one of three recognized in Evidence Code section 115.[3] However, it has been imposed in California in only limited cases[4] and then as a reflection of "the degree of confidence our society thinks [a factfinder] should have in the correctness of factual conclusions for a particular type of adjudication." (*In re Winship* (1970) 397 U.S. 358, 370 [90 S.Ct. 1068, 1075-1076, 25 L.Ed.2d 368] (conc. opn. of Harlan, J.).) As the United States Supreme Court stated in *Addington* v. *Texas* (1979) 441 U.S. 418 [99 S.Ct. 1804, 60 L.Ed.2d 323], "The standard [of proof] serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision. [¶] . . . [¶] . . . One typical use of the [clear and convincing] standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly

---

attorney], 3295, subd. (c) [discovery in punitive damages action].)" (*College Hospital Inc.* v. *Superior Court, supra,* 8 Cal.4th at pp. 712-713.)

[3]Evidence Code section 115 provides: " 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

[4]The following is a summary of some of the evidentiary circumstances where California has recognized or imposed a clear and convincing burden of proof standard. They include: (1) deed absolute in form is actually a mortgage (*Beeler* v. *American Trust Co.* (1944) 24 Cal.2d 1, 7 [147 P.2d 583]; *Wehle* v. *Price* (1927) 202 Cal. 394, 396-397 [260 P. 878]); (2) deed absolute in form is actually a conveyance subject to a trust (see *Sheehan* v. *Sullivan* (1899) 126 Cal. 189, 192-193 [58 P. 543]; *Adams* v. *Young* (1967) 255 Cal.App.2d 145, 155 [62 Cal.Rptr. 877]; *Spaulding* v. *Jones* (1953) 117 Cal.App.2d 541, 545 [256 P.2d 637]); (3) oral agreement to make a will (see *Lynch* v. *Lichtenthaler* (1948) 85 Cal.App.2d 437, 441 [193 P.2d 77], disapproved on another point in *Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 565 [212 P.2d 878]); (4) property acquired after marriage is nevertheless separate property (overcoming the strong presumption in favor of community property) (see *Estate of Nickson* (1921) 187 Cal. 603, 605 [203 P. 106]); (5) proof to overcome rebuttable presumptions of paternity (Fam. Code, § 7612); (6) establishment of a probate conservatorship (*Conservatorship of Sanderson* (1980) 106 Cal.App.3d 611, 620 [165 Cal.Rptr. 217]); (7) proceedings to terminate parental rights (*In re Laura F.* (1983) 33 Cal.3d 826, 839 [191 Cal.Rptr. 464, 662 P.2d 922]; *In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198]); (8) proof of malice in defamation of public official or public figure (*Tague* v. *Citizens for Law & Order, Inc.* (1977) 75 Cal.App.3d Supp. 16, 25 [142 Cal.Rptr. 689]); (9) proof of obscenity in public nuisance abatement action (*People* ex rel. *Cooper* v. *Mitchell Brothers' Santa Ana Theater* (1982) 128 Cal.App.3d 937, 940 [180 Cal.Rptr. 728]); (10) proof to support an order that a conservatee lacks the capacity to give a written, informed consent to convulsive treatment (*Lillian F.* v. *Superior Court* (1984) 160 Cal.App.3d 314, 323-324 [206 Cal.Rptr. 603]); (11) proof of oral transmutation of separate property into community property (see *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 487 [273 Cal.Rptr. 696]; Evid. Code, § 662; see also 1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and Presumptions, §§ 160-161, pp. 137-139).

reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." (*Id.*, at pp. 423-424 [99 S.Ct. at pp. 1807-1808].) By the 1987 legislation, California elevated a claim for punitive damages to this higher level of public concern.[5]

For nearly 100 years, California has applied a consistent definition to this very high standard of proof. In *In re Angelia P., supra,* 28 Cal.3d 908, our Supreme Court stated that the "clear and convincing" standard required, as the majority notes, "a finding of high probability." What the majority opinion ignores, however, is that the *Angelia P.* court went on expressly to approve a characterization of this proof standard which fully supports the instruction requested by Arthur Young. (*Id.* at p. 919.) "This standard is not new. We described such a test, 80 years ago, as requiring that the evidence be ' "so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable mind." ' (*Sheehan* v. *Sullivan* (1899) 126 Cal. 189, 193 [58 P. 543].) *It retains validity today.* [Citation.]" (*In re Angelia P., supra,* 28 Cal.3d at p. 919, italics added; see also *Copp* v. *Paxton* (1996) 45 Cal.App.4th 829, 846 [52 Cal.Rptr.2d 831]; *Lillian F.* v. *Superior Court, supra,* 160 Cal.App.3d at p. 320; *In re David C.* (1984) 152 Cal.App.3d 1189, 1208 [200 Cal.Rptr. 115]; *In re Terry D.* (1978) 83 Cal.App.3d 890, 899 [148 Cal.Rptr. 221].)

My colleagues emphasize that the *Sheehan* court, in its 1899 opinion, had also referred to seven *other* characterizations of the clear and convincing burden which were not mentioned by *Angelia P.* Quoting from an earlier opinion (*Mahoney* v. *Bostwick* (1892) 96 Cal. 53 [30 P. 1020]), *Sheehan* noted that different courts had described the "clear and convincing" standard as requiring evidence which was: "clear, satisfactory and convincing," "clear and satisfactory," "clear and convincing," "very satisfactory," "strong and convincing," "clear, unequivocal, and convincing," and "clear, explicit and unequivocal." Little wonder that the *Angelia P.* court ignored such tautological expressions and chose instead to describe the proof standard in those terms used in *Sheehan* ("so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind") which would provide at least some assistance to a trier of fact attempting to apply that standard.

When the Legislature determined in 1987 to impose this much higher burden of proof in punitive damage cases, it did so in the context of an

---

[5]As we recently noted, "Beyond doubt, when the Legislature amended Civil Code section 3294 in 1987 to impose a 'clear and convincing' evidentiary standard, it intended to impose a new statutory limitation on the award of punitive damages. [Citation.]" (*Stewart* v. *Truck Ins. Exchange* (1993) 17 Cal.App.4th 468, 482, fn. 27 [21 Cal.Rptr.2d 338].)

uninterrupted and consistent line of decisions which have accepted and followed the language which was initially used in *Sheehan* and ultimately specifically endorsed in *Angelia P.* " 'It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them. [Citations.]' [Citations.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; see also *Anderson* v. *I. M. Jameson Corp.* (1936) 7 Cal.2d 60, 67 [59 P.2d 962]; *Estate of Maron* (1986) 183 Cal.App.3d 707, 712-713 [228 Cal.Rptr. 402].)

The Legislature's decision to apply a more rigorous proof standard to claims of punitive damage liability, taken together with the Supreme Court's very specific articulation of what the clear and convincing standard required, must control our understanding of the proof burden now imposed in punitive damage cases. In my view, the conclusion is inescapable that the Legislature necessarily, and as a matter of law, intended the same meaning and definition of that standard as set out in *Angelia P.* Indeed, given the history of consistent judicial interpretation, there was no need to attempt a legislative definition of that standard. Significantly, there is no legislative history to the contrary.

My colleagues complain that the language specifically endorsed by *Angelia P.* imposes a burden "approaching the criminal burden of proof of beyond a reasonable doubt." I quite agree. The clear and convincing standard is indeed a high one, as it was intended to be; it does *approach* the criminal standard, but it is not the same or even "essentially" the same. The attempt by the majority to equate the language approved by *Angelia P.* with a reasonable doubt standard, and thereby justify its rejection, is a circular argument based upon a false premise simply assumed by the majority. In effect, this argument merely quarrels with the manner in which the Supreme Court chose to define "clear and convincing." The *Angelia P.* court itself defined the standard by use of the language requested by Arthur Young while, at the same time, making it clear that this was a lower burden of proof than "beyond a reasonable doubt." (*In re Angelia P., supra,* 28 Cal.3d at pp. 918-919.)

As this court has previously stated on three other occasions, the language of BAJI No. 2.62 as it presently reads is both misleading and unnecessarily limited. It suggests an evidentiary test which is significantly less rigorous than the one the Supreme Court has repeatedly defined in much stronger and more explicit terms. (*In re Marriage of Weaver, supra,* 224 Cal.App.3d at p. 487, fn. 8; see also *Mock* v. *Michigan Millers Mutual Ins. Co., supra,* 4

Cal.App.4th at pp. 332-333; *DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 566, fn. 19 [282 Cal.Rptr. 181].) While, as the majority correctly notes, BAJI No. 2.62 is not an incorrect statement of the law (*Mock, supra,* at p. 333, fn. 29; *Roberts* v. *Ford Aerospace & Communications Corp.* (1990) 224 Cal.App.3d 793, 804 [274 Cal.Rptr. 139]), it does not go far enough. To that extent, it misleads jurors by providing no guidance whatever as to how they are to recognize "clear and convincing" evidence. Nor does the present instruction assist the jury in determining whether that evidentiary standard has been met. Given the Supreme Court's descriptive characterization in *Angelia P.* of this elevated burden, a judge conducting a bench trial has better information as a trier of fact than do jurors in a jury trial. How do we justify such a difference, not to mention the discrimination imposed upon defendants who have to try a punitive damage case to a jury? In my view, this practice cannot be justified. A proper remedy would be to modify BAJI No. 2.62, *when requested by a party,* to reflect the more explicit language used by the courts to describe what is meant by the term "clear and convincing." (Cf. *Roberts* v. *Ford Aerospace & Communications Corp., supra,* 224 Cal.App.3d at p. 804.)

In this case, Arthur Young did make such a request[6] and Mattco made no objection thereto. Nonetheless, the trial court refused to give anything other than the unmodified BAJI instruction. I believe that was error. The language of BAJI No. 2.62, requires a finding of "high probability" and then goes on to say that more than a mere "preponderance" of the evidence is necessary. That language does not come close to explaining what the Supreme Court has said is required to meet the "clear and convincing" standard. On the other hand, the rejected instruction refers to the clarity as well as the strength of the evidence. The simple reference in BAJI to "high probability," standing alone, does not call for a juror conviction that the matter is without "substantial doubt" or that it commands "the unhesitating assent of every reasonable mind." The excluded language was critically important because it answered the question, "how high must the probability be?"

Given that we reverse and remand this matter for a new trial, it is not necessary for me to belabor the question of whether these erroneous instructions were prejudicial. Nonetheless, it is clear from the record that the trial

---

[6]The proposed jury instruction submitted by Arthur Young modified BAJI No. 2.62, as follows: " 'Clear and convincing' evidence means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts for which it is offered as proof. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence. *The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating agreement of every reasonable mind.*" (Italics added.) As I point out in footnote 8, *post,* a proper instruction need not use these exact words.

court's refusal to properly define the term "clear and convincing" was indeed prejudicial to Arthur Young's defense. Several of the factors outlined in *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548 [34 Cal.Rptr.2d 607, 882 P.2d 298], were implicated.[7] The evidence with respect to whether Arthur Young had committed fraud was in serious conflict and the jury, which required six days of deliberation to reach its verdict, asked the court several times for help with the instructions defining fraud. This was the very issue to which the jury had to be persuaded by the "clear and convincing" standard. Thus, I believe it fairly can be concluded that a different verdict on this issue was reasonably probable had a proper instruction on the evidentiary standard been given.

For the foregoing reasons, I would remand this matter with additional instructions to submit the issue of punitive damage liability to the jury upon a proper and meaningful definition of the term "clear and convincing."[8] It is simply not enough to say only that "clear and convincing" requires a "high probability of the truth," a "higher" level of proof than the preponderance standard. Given the Supreme Court's past consistent approach to a more exacting definition of this evidentiary standard, the continued use of an unmodified BAJI No. 2.62 is an abdication of judicial responsibility to provide jurors with adequate instructions on the law. The Supreme Court should consider granting review of this case so as to address this important question.

Respondent's petition for review by the Supreme Court was denied April 30, 1997.

---

[7]In *Soule,* the Supreme Court summarized the rule for determining whether instructional error was prejudicial to the complaining party. It stated that consideration of a number of factors is required: " '(1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations].' [Citations.]" *Soule* v. *General Motors Corp., supra,* 8 Cal.4th at pp. 570-571.)

[8]Given the legal characterizations endorsed by the *Angelia P.* court, and recognizing that the precise language utilized in a judicial opinion may not be appropriate for use in a jury instruction, I would suggest that a proper instruction would add the following sentence to BAJI No. 2.62: "It requires that the evidence be sufficiently strong to command your immediate agreement and so clear as to leave you in no substantial doubt as to the truth of those facts."